## ROSENTHAL *v.* WALKER, Assignee.

.IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF LOUISIANA.

Argued March 21st, 1884.—Decided March 31st, 1884.

*Bankruptcy—Statute of Limitations—Evidence.*

Where an action by an assignee in bankruptcy is intended to obtain redress against a fraud concealed by the party, or which from its nature remains secret, the bar of the statute of limitations, Rev. Stat. § 5057, does not begin to run until the fraud is discovered. *Bailey* v. *Glover*, 21 Wall. 342, cited and affirmed. *Wood* v. *Carpenter*, 101 U. S. 135, and *National Bank* v. *Carpenter*, 101 U. S. 567, distinguished.

It is competent, as tending to prove a fraudulent transfer of property in contemplation of bankruptcy, to show a prior valid sale from the bankrupt to the same party, if it can be connected with evidence tending to show a secret agreement by which the bankrupt acquired an interest in the goods sold.

Evidence that a letter properly directed was put in the post office is admissible to show presumptively that the letter reached its destination; and if the party to whom the letter was addressed denies its receipt, it is for the jury to determine the weight of the presumption.

Proof that a bankrupt when being examined respecting his property refuses to answer questions on the ground that the answers might criminate him, as an indictment was pending against him for a criminal offence, under the bankrupt laws, does not so put the assignee on inquiry as to fraudulent transfers of the bankrupt's property as to deprive him of the benefit of the rule respecting the statute of limitations laid down in *Bailey* v. *Glover*, 21 Wall. 342, and affirmed in this case.

This was an action brought by the assignee of a bankrupt to recover the value of property alleged to have been fraudulently transferred by the bankrupt in violation of the provisions of the bankrupt act. The defendant below resisted the recovery

on the ground that the action was not brought within two years from the time when the cause accrued; and also on the merits. The plaintiff below replied as to the statute of limitations that the facts were fraudulently concealed, and that the suit was brought within two years after they came to his knowledge. Some exceptions were taken to the rulings of the court on the admission of evidence, all of which more fully appear in the opinion of the court. Verdict for the plaintiff. The defendant sued out this writ of error.

*Mr. Shellabarger* for plaintiff in error.

*Mr. Chester H. Krum* and *Mr. E. H. Lewis* for defendant in error.

Mr. Justice Woods delivered the opinion of the court.

This was an action at law brought December 30th, 1879, by Preston Player, as assignee in bankruptcy of Thomas Carney, against the plaintiff in error, Joseph Rosenthal, under section 5047 of the Revised Statutes, which authorizes an assignee in bankruptcy to recover by suit in his own name all the estate, debts and effects of the bankrupt. The suit was brought to recover from Rosenthal certain money paid and property sold to him by Carney in fraud, as was alleged, of the bankrupt act. A petition in involuntary bankruptcy had been filed against Carney by his creditors, October 20th, 1875. He was adjudicated a bankrupt March 18th, 1876, by the District Court for the Eastern District of Missouri, and on May 1st, 1876, Player, the defendant in error, was appointed assignee of the estate. The petition having averred the foregoing facts, alleged that Carney, being insolvent and in contemplation of insolvency, as Rosenthal had reasonable cause to believe, on June 22d, 1875, with intent to defeat the operation of the bankrupt law, and to evade its provisions, as Rosenthal well knew, sold and transferred to him five hundred cases containing 50,000 pairs of boots and shoes of the value of $45,000, and that on July 20th, following, to make effectual the fraudulent transfer, Rosenthal agreed that Carney should have an equal interest with him in the goods so

sold and transferred, and accordingly recognized and admitted such interest. The petition also averred that Carney, being insolvent and in contemplation of insolvency, as Rosenthal had reasonable cause to believe, and with intent to hinder the operation of the bankrupt law, and evade its provisions, as Rosenthal well knew, on July 22d, 1875, sold and transferred to him one hundred barrels of whiskey, &c., of the value of $9,400, and Carney also stipulated that he should retain an interest in the whiskey equal with that of Rosenthal, who then and there recognized said interest accordingly, and that Rosenthal, between July 20th, 1875, and March 1st, 1876, disposed of and converted to his own use all the property so sold and transferred to him.

The petition further alleged that Carney, between July 20th, and August 23d, 1875, inclusive, being insolvent and in contemplation of insolvency, as Rosenthal had reasonable cause to believe, and with the purpose of defeating the object and hindering the operation of the bankrupt law, as Rosenthal well knew, made to him certain payments of money, amounting in the aggregate to $30,000.

The petition then made the following averment :

"The plaintiff states that both the said Carney and the defendant kept concealed from him, the said plaintiff, the fact of the said payment and transfer of the said aggregate sum of $30,000, hereinbefore mentioned, and of all the component parts thereof ; and also kept concealed from him the fact of the sale, transfer, and conveyance of the said goods and merchandise hereinafter set forth, and that he, the said plaintiff, did not obtain knowledge and information of the said matters, or either of them, until the 29th day of November, 1879, and then for the first time the said matters were disclosed to him and brought to his knowledge."

Rosenthal excepted to the petition on two grounds : First, because as appeared on its face, the suit was not brought within two years from the time when the cause of action accrued ; and, second, because the said sale of boots and shoes, alleged to have been made by Carney to Rosenthal on June 22d, 1875,

was not made within three months next before the filing of the petition in bankruptcy against Carney.

The court overruled the first exception absolutely, and ordered that the second exception

" be dismissed so as not to prejudice the right of plaintiff to prove any of the transactions alleged in said petition to have taken place on the 20th day of July, 1875, and within three months next before the institution of proceedings in bankruptcy against the bankrupt, Thomas Carney, and maintaining said ground of exception only so far as relates to the transfer and sale of five hundred cases of boots and shoes, alleged to have been made on the 22d day of June, 1875. But the plaintiff shall have the right to prove, as by him alleged, that subsequently to 22d June, 1875, the bankrupt, by agreement with defendant, was reinvested with an interest in said goods, and thereafter, within three months, the goods were disposed of as alleged."

On March 3d, 1880, Rosenthal filed his answer, which was a general denial of all the averments of the petition. On December 7th following, after the trial had commenced, he filed the following plea and supplemental answer:

" Now comes the defendant and pleads the prescription of two years, as provided for in the bankruptcy act, sec. 5057, of the Revised Statutes of the United States, in bar of plaintiff's action.

" And for supplemental answer to petition of plaintiff, defendant specially denies that the matters and things alleged in plaintiff's petition were first disclosed to him on November 29th, 1879, as alleged ; but avers that said plaintiff had full knowledge of all transactions that ever took place between the defendant and Carney, bankrupt, at the time said plaintiff was elected assignee."

On the motion of the plaintiff the supplemental answer was stricken out, and the defendant excepted, but, as the record shows,

" During the trial of the cause no restraint was put upon the defendant in offering evidence as to the knowledge of plaintiff, as alleged in that part of the supplemental answer which was stricken out, and both sides offered evidence as to such knowledge,

and the court, upon this point, left it to the jury to say whether the action was commenced within two years from the time when the plaintiff knew, or by due diligence might have known, of the cause of action."

The pleadings having been thus made up, the issues of fact were submitted to a jury, which returned a verdict for the plaintiff for $17,500, on which the court rendered judgment against the defendant. To reverse that judgment this writ of error is prosecuted. Player, the original assignee, having died after the judgment in the Circuit Court, W. R. Walker was appointed assignee and substituted as defendant in error in his stead.

The petition disclosed upon its face that the suit was brought more than four years after the cause of action arose, and more than three years after the appointment of the defendant in error as assignee. Section 5057 of the Revised Statutes provides as follows:

"No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against the assignee. And this provision shall not in any case revive a right of action barred at the time when the assignee is appointed."

The first question raised by the assignments of error is, whether the averments of the petition excuse the failure to bring the suit within two years after the cause of action accrued to the defendant in error. These averments are in substance that Carney, the bankrupt, and Rosenthal, the plaintiff in error, kept concealed from the defendant in error the payments of money and transfers of property charged in the petition, and that the defendant in error did not obtain information of said matter until November 29th, 1879, when for the first time they were disclosed to him and brought to his knowledge.

The judgment of the Circuit Court, by which it was held

that these averments excused the failure to bring the suit within two years after the cause of action accrued, is sustained by the opinion and decree of this court in the case of *Bailey* v. *Glover*, 21 Wall. 342. That case was a bill in equity filed by the complainant as assignee in bankruptcy of Glover, one of the defendants, to set aside a conveyance made by him of his property to defraud his creditors. The suit was brought more than two years after the appointment of the assignee. To excuse the delay and take the case out of the operation of the statute, the following averment was made: the bankrupt and the other defendants, to whom he had conveyed his property, "kept secret their fraudulent acts and endeavored to conceal them both from the knowledge of the assignee and his one creditor, whereby both were prevented from obtaining any sufficient knowledge or information thereof until within the last two years, and that even up to the present time they had not been able to obtain full and particular information as to the fraudulent disposition made by the bankrupt of a large part of his property." The court held that "as the bill contained a distinct allegation that the defendants kept secret and concealed from the parties interested the fraud which was sought to be redressed," the case was not subject to the bar of the statute. The court added: "To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure." The court also declared that the exception to the bar of the statute was applicable to suits at law as well as in equity.

The case of *Bailey* v. *Glover* is a decision construing the statute which is relied on in this case, and unless subsequently overruled by this court is conclusive of the point under discussion. It has never been overruled. The plaintiff in error relies on the case of *Wood* v. *Carpenter*, 101 U. S. 135, and *National Bank* v. *Carpenter*, Id. 567. The first was an action at law, the second a suit in equity. The court in both cases was called on to construe a statute of limitations of the State

of Indiana, and it followed the adjudications of the Supreme Court of that State upon the same statute. Neither case refers to the opinion of the court in *Bailey* v. *Glover*, or can be held to overrule or modify it. The case of *Bailey* v. *Glover* has been often cited by this court, but has never been doubted or qualified. *Wood* v. *Bailey*, 21 Wall. 640 ; *Wiswall* v. *Campbell*, 93 U. S. 347 ; *Gifford* v. *Helms*, 98 U. S. 248 ; *Upton* v. *McLaughlin*, 105 U. S. 640. We are of opinion, therefore, that the assignment of error under consideration is not well founded.

The next complaint of the plaintiff in error is, that after the Circuit Court had struck out of the petition the averments relating to the sale on June 22d, 1875, of 500 cases of boots and shoes, by Carney to the plaintiff in error, the court admitted, in spite of the objection of the latter, the depositions of Louis Temm and other witnesses, which related solely to that sale. The contention is that this evidence, relating as it did to a sale that was perfectly valid and the averments concerning which had been stricken from the petition, was immaterial and tended to mislead and confuse the jury to the injury of the plaintiff in error.

The bill of exceptions shows that the court, in overruling the objection to the admission of this evidence stated, that "the facts and circumstances surrounding the case should be submitted to the jury ; and the facts of the sale on June 22d, 1875, and its circumstances, were allowed to be proved on the representation of counsel that said evidence was to be followed up by testimony showing a subsequent investment of an interest in said goods in the bankrupt by agreement with defendant."

In accordance with this representation of counsel, proof tending to show that on July 1st, 1875, the bankrupt, by a secret agreement with the plaintiff in error, acquired title to a half interest in the goods sold to the latter on June 22d preceding, was offered by the defendant in error and admitted.

We think the court was right in admitting the depositions relating to the sale of June 22d. Besides the charge made in the petition of the fraudulent sale of goods on June 22d, 1875, there was an averment of another sale by the bankrupt to

Carney of other goods of the value of $9,400 on July 22d, 1875, and within three months next before the proceedings in bankruptcy. It was averred that this sale was made by Carney in contemplation of insolvency, and that the plaintiff in error had reasonable cause to believe such to be the fact. To establish these propositions it was perfectly competent to show what had been the business dealings between Carney and the plaintiff in error before the sale in question. Thus, to prove that plaintiff in error had reasonable cause to believe that the sale made to him by Carney on July 22d was in contemplation of insolvency, it was competent to show that on June 22d, just one month before, Carney had made another sale to the plaintiff in error of fifty thousand boots and shoes worth $45,000; and then within eight days thereafter, by a secret agreement, had reinvested Carney with the ownership of one-half the property so sold.

Evidence tending to establish both these facts was produced and submitted to the jury. It clearly tended to show that Carney was trying to cover up his property from his creditors, and that plaintiff in error was aiding him to do it, and that when Carney made the subsequent sale to the plaintiff in error on July 22d, the latter had reasonable cause to believe that it was made in contemplation of insolvency. The evidence objected to was, therefore, proof of one of two facts, which, taken together, tended to establish a material and necessary averment of the petition, and was, therefore, properly admitted.

The next assignment of error relates to the admission in evidence by the Circuit Court of certain letter-press copies of letters written by Carney to the plaintiff in error.

The record shows that Carney testified that, while he was in St. Louis and the plaintiff in error in New Orleans, they were corresponding with each other; that several letters were written by each to the other, and were received by each from the other; that Carney, having so testified, produced two letters purporting to have been addressed by the plaintiff in error, in New Orle-ns, to him at St. Louis, and which he testified he had received through the mails. These letters having been admitted in evidence, Carney produced certain letter-press

copies of letters which he testified he had written to the plaintiff in error, and mailed with his own hand in the post office at St. Louis, postage prepaid, directed to the plaintiff in error at New Orleans, and to his proper address in that city.

The record also shows that in response to a subpœna *duces tecum* the plaintiff in error swore that he never received the letters addressed to him by Carney.

Upon this state of the evidence, the defendant in error offered to read to the jury the letter-press copies of the letters which Carney swore he had mailed to the plaintiff in error. They were objected to, but were admitted by the court in spite of the objection. This action of the court is now urged as a ground for reversing the judgment.

We think the copies were properly admitted in evidence. The point in dispute between the parties was whether the original letters had been received by the plaintiff in error. One of the letters from the plaintiff in error to Carney is clearly in answer to two of the letters which Carney swears he mailed to him, and is proof that those letters were received by him. Independently of this fact, the proof that the letters were received by the plaintiff in error was *prima facie* sufficient, and the court properly allowed the copies to ·go to the jury, leaving them to decide, on all the evidence, whether the originals had been received.

The rule is well settled that if a letter properly directed is proved to have been either put into the post·office or delivered to the postman, it is presumed, from the known course of business in the post office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed. *Saunderson* v. *Judge,* 2 H. Bl. 509; *Woodcock* v. *Houldsworth,* 16 M. & W. 124; *Dunlop* v. *Higgins,* 1 H. L. Cas. 381; *Callan* v. *Gaylord,* 3 Watts. 321; *Starr* v. *Torrey,* 2 Zabr. 190; *Tanner* v. *Hughes,* 53 Penn. St. 289; *Howard* v. *Daly,* 61 N. Y. 362; *Huntley* v. *Whittier,* 105 Mass. 391. As was said by Gray, J., in the case last cited, " the presumption so arising is not a conclusive presumption of law, but a mere inference of fact founded on the probability that the officers of the government will do their duty and the usual course of busi-

ness, and when it is opposed by evidence that the letters never were received, must be weighed with all the other circumstances of the case, by the jury in determining the question whether the letters were actually received or not."

The presumption that a letter was received is based on such considerations that it is perfectly clear that it applies without regard to the contents of the letter. The contention, therefore, of counsel for plaintiff in error that the presumption fails when the contents of the letter would, if the letter were received, tend to subject the party sending it to a penalty or forfeiture, is not well founded.

The rule and the authorities cited in support of it sustain the action of the court in admitting in evidence the copies of the letters, and in submitting to the jury the question whether the letters had been received to be decided upon all the testimony bearing upon the point.

The next assignment of error relates to the charge given by the court to the jury, and its refusal to charge as requested by the plaintiff in error.

It appears from the record that Player, the original assignee in bankruptcy of Carney, was sworn on the trial as a witness in his own behalf. He testified that he was an attorney; that he had been one of the solicitors of the creditors of Carney in the proceedings to have him adjudicated a bankrupt; that in pursuance of his rights as assignee he had in May, 1876, subjected the bankrupt to an examination pursuant to the provisions of the bankrupt act, at which said bankrupt, after having testified at great length, finally refused to answer any other questions relating to his property or affairs, on the ground that his answers might criminate him, as there was an indictment for a criminal offence under the bankrupt laws of the United States then pending against him; that thereupon said examination ceased, and defendant in error took no further steps to compel said bankrupt to answer, because he thought it would be better not to press him at that time, and the defendant in error did not again examine the bankrupt until November, 1879.

The plaintiff in error contends that upon this evidence the

court should have charged the jury, as he requested it to do, that the knowledge, in 1876, on the part of the assignee, that the bankrupt had refused to answer proper questions, relating to his property and effects, when under an examination authorized by law, on the ground that his answers might criminate him, and the knowledge of the fact that the bankrupt was under indictment for an offence committed against the provisions of the bankrupt law, created such a state of affairs as put the assignee on inquiry in relation to the alleged fraudulent sales; that, being put on inquiry in 1876, he must be presumed to have known all that he could have found out by due diligence, and that it followed as matter of law that he had knowledge of the fraudulent sales, and that there was therefore no concealment, such as would take the case out of the bar of the statutes.

The question raised by the pleadings, to be decided by the jury, was,—whether the cause of action had been fraudulently concealed from the defendant in error. The concealment was averred by the petition and denied by the answer. The charge which the court was asked to give the jury assumed that the only evidence on this point was that relied on by the plaintiff in error. But this was not the fact. The record shows that there was evidence, and persuasive evidence, tending to prove actual concealment by the bankrupt and the plaintiff in error of the facts upon which the cause of action was founded. Besides, the bill of exceptions does not profess to give all the evidence upon this question. The court was therefore, in effect, asked to charge the jury to consider the evidence on one side of a disputed issue and disregard all the evidence on the other. Instead of doing this the court said to the jury:

"It is for you to say whether it is a case where this assignee has failed to make the discovery because he did not use due diligence, or whether it is a case where, using due diligence, he failed to make the discovery because the parties to the transaction, who were already the repositories of its existence, one or more of them, wickedly concealed it and filed oath upon oath in effecting that concealment. . . . So far as the instruction

asked assumes any fact I decline to give it, and I shall leave the whole question of prescription or no prescription to be determined by you.   It is undoubtedly true that if he was put upon inquiry as a reasonable man, which he refused to follow up, and which, if you found as a fact, if he had followed up would have led to a knowledge, then the statute would have been a bar.   But it is for you to say whether, upon all the evidence, there has or has not been such concealment and so continued as would qualify the rule as to prescription."

We are of opinion that the issue was fairly presented by the charge given by the court, and that the instructions requested by the plaintiff in error would have been unjust to the defendant in error, and have required the jury to shut their eyes to all the evidence on one side of the issue to which the charges referred.

But if the charges requested had been unobjectionable, the court, having in its own way fairly presented the issues, was not bound by its duty to give them.   *The Schools* v. *Risley,* 10 Wall. 91.

We are of opinion, therefore, that there was no error in the refusal of the court to charge the jury as requested by the plaintiff in error or in the charge given to the jury.

There are other assignments of error which have not been argued by the counsel for the plaintiff in error.   Most of them have been covered by what we have said.   The others present, in our opinion, no good ground for the reversal of the judgment.   We find no error in the record.

*The judgment of the Circuit Court is affirmed.*