PICKENS et al. v. MERRIAM et al.*

(Circuit Court of Appeals, Ninth Circuit. May 21, 1917.)

No. 2783.

1. EQUITY ⬳72(1)—"LACHES"—PREJUDICE FROM DELAY.

Laches is not a mere matter of time, but principally a question of the inequity of permitting a claim to be enforced because of some change in the condition or relations of the property or the parties.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 207, 210–213, 225.

For other definitions, see Words and Phrases, First and Second Series, Laches.]

2. CANCELLATION OF INSTRUMENTS ⬳45—SUIT FOR ACCOUNTING—PRESUMPTIONS.

In a suit by a husband's heirs to require the wife's administrator to account respecting property of the husband coming into his possession and fraudulently omitted from his inventory and accounts, to set aside deeds from the wife, and to set aside releases which plaintiffs were induced to execute by fraud, defended on the ground of laches, a marked increase in the value of property in Los Angeles and San Pedro would not be presumed; this being a matter of defense to be established by proof.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 100, 101.]

3. EXECUTORS AND ADMINISTRATORS ⬳513(10)—ACCOUNTING—CONCLUSIVENESS.

The action was not barred by the proceedings in or decree of the probate court wherein the administrator had accounted, where by reason of the conduct of defendants in concealing the facts concerning the estate there had been no adversary trial or decision upon the issues involved in such suit.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2279, 2284.]

4. EXECUTORS AND ADMINISTRATORS ⬳513(15)—ACCOUNTING—CONCLUSIVENESS.

The settlement of an administrator's account by the decree of a probate court does not conclude as to property accidentally or fraudulently withheld from the account.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2289, 2290.]

5. EXECUTORS AND ADMINISTRATORS ⬳469(3)—ACCOUNTING—JURISDICTION OF EQUITY.

If property be omitted from an administrator's account by mistake, but be subsequently discovered, a court of equity may exercise its jurisdiction, and take such action as justice to the heirs or creditors may require, even though the probate court might open its decree and administer upon the omitted property.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2007, 2009.]

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Benj. F. Bledsoe, Judge.

Suit by Louisa Pickens and another against J. H. Merriam and others. From a decree dismissing the bill, plaintiffs appeal. Reversed and remanded.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied October 8, 1917.

Suit for an accounting on the part of the defendants for certain property belonging to the estates of Ferdinand Fensky and Jeanette Fensky, deceased, alleged to have been acquired by the defendants through various fraudulent acts perpetrated by them and by Jeanette Fensky and to be wrongfully withheld from the complainants, who claim to be the lawful heirs of Ferdinand and Jeanette Fensky, and for the cancellation of certain deeds. The complaint alleges, in part, as follows:

That the complainants are sisters of Ferdinand Fensky, who died intestate in Los Angeles county, Cal., on August 7, 1903, leaving property in California and Kansas, consisting of real and personal property; the latter being in the form of notes and contracts for the sale of real property located in Topeka, Kan., and cash amounting to $10,000, aggregating $100,000 in value. That in October, 1903, Jeanette Fensky was appointed by the superior court of Los Angeles county, Cal., administratrix of the estate of Ferdinand Fensky, and that one M. T. Campbell, agent and representative of Jeanette Fensky in Topeka, Kan., was appointed administrator of the estate by the probate court of Shawnee county, Kan., a few days thereafter. That after the appointment of Jeanette Fensky as administratrix she came into possession of real property, cash, notes, and other evidences of indebtedness due the deceased; that she caused the California real estate to be falsely and fraudulently appraised and inventoried at a total sum of about $6,000; and that, instead of returning a true inventory of the personal property, she inventoried but one promissory note for the sum of $400, and purposely failed to list and inventory the cash and evidences of indebtedness to the deceased from the purchasers of his real property in Kansas. That she sent all of the promissory notes and other evidences of indebtedness to her agent and representative, M. T. Campbell, and entered into a fraudulent and collusive agreement with him to obtain releases from the complainants of their interest in the estate. That Campbell filed his inventory showing personal property amounting to $20,927.64, consisting of $4,297.14 cash and a part of the promissory notes, but omitted the notes of W. C. Stein and Simms and the indebtedness owing from purchasers of the Kansas real estate.

That the Kansas law provides that the real property of an intestate husband dying without children descends directly to his widow, which was well known to Jeanette Fensky and Campbell, who, knowing that the contracts of sale of the real estate had not been recorded, and that complainants had no knowledge that it had been sold, concealed the fact that the real estate had been sold, and, by listing the same as real property, falsely represented to complainants that the real estate so sold belonged to the widow under the law of Kansas. That prior to his death Ferdinand Fensky and Jeanette Fensky had drawn up and signed deeds of conveyance to the several purchasers of the Kansas real property, but did not deliver the same. That all of said undelivered deeds came into the hands of Jeanette Fensky upon the death of her husband. That, well knowing that the execution by her or by Campbell, as administrator, of deeds to these purchasers, would reveal the fact that the real estate had been sold, and that the purchase money constituted personal property of the estate, Jeanette Fensky and Campbell began negotiations with the purchasers, as a result of which the purchasers accepted the undelivered deeds, notwithstanding the death of Ferdinand Fensky, and executed mortgages to Jeanette Fensky for the amount of the unpaid purchase money due under the contracts of sale, which mortgages were omitted from the inventories of Jeanette Fensky and Campbell and have never been accounted for by them, and the same are unadministered assets of the estate of Ferdinand Fensky, in which these complainants have an interest as his heirs at law.

That, shortly after the appointment of Campbell as administrator, he represented to complainants that it would take a long time to close the estate, that many of the promissory notes were of little or doubtful value, that the costs of administration would amount to a considerable sum, that, even if he should be able to collect the notes, the shares of the estate to which each of the complainants ultimately might be entitled would not exceed $1,000 in value, that the real estate in Topeka, Kan., all went to the widow, and that

the property left by the intestate was community property, and offered to buy their claims against the estate for $1,000 each, which offer was accepted by the complainants, and thereupon the complainant Louisa Pickens, on or about July 29, 1904, executed and delivered to the said Campbell for the said Jeanette Fensky (a release and quitclaim of) all of the right, title, and interest of the said Louisa Pickens in and to the property and estate of her said deceased brother, and on or about August 3, 1904, the complainant Johanna Schutt executed and delivered to the said Campbell for the said Jeanette Fensky a similar release and quitclaim of all of the right, title, and interest of the complainant Johanna Schutt in and to the property, assets, and estate of her said deceased brother. That all of the foregoing representations made by Campbell were false, fraudulent, and misleading, and known to be such by Campbell and by Jeanette Fensky, and that complainant's shares would have amounted to more than $8,000. That the $1,000 paid to each of the complainants by Campbell was paid from funds in his hands collected from the assets of the estate, and was only a part of the money then due to complainants from the estate, and Jeanette Fensky parted with nothing of value for the releases and quitclaims, which are without consideration, fraudulent, and void.

That Campbell remitted to Jeanette Fensky about $35,000 in cash and secured notes, being proceeds of the assets of the estate which came into his hands. That on or about March 30, 1905, Jeanette Fensky filed a pretended final account, in which she represented that she had secured the interest of all the brothers and sisters and other heirs at law of her deceased husband, and that she was the only one entitled to said estate; and, there being no opposition to the account, the same was received and approved by the superior court, and an order entered discharging her as administratrix and closing the estate. That thereafter, upon the faith of the deeds of release and quitclaim from the complainants, Jeanette Fensky secured purchasers for some of the property in California, and with the proceeds of the sale of this property, together with the money and mortgages received from Campbell, purchased real estate in Los Angeles county, Cal. That Jeanette Fensky died on July 8, 1908. That before her death she had executed, without consideration, deeds to the property so acquired. "That all of said deeds so made out by the said Jeanette Fensky were not delivered to the respective grantees named therein until after the death of the said Jeanette Fensky," and that, therefore, title did not pass to the grantees but was in Jeanette Fensky at the time of her death.

That J. H. Merriam, who had been appointed administrator of the estate of Jeanette Fensky by the superior court of Los Angeles county, Cal., upon the petition of the defendants Eugene Wellke, Amanda Katzung, and Alma J. Schmidt, filed a pretended inventory of the estate showing the total assets as consisting of $2,324.38 in cash, a claim against the defendant Amanda Katzung, and a note of the defendant Don Ferguson for $1,050. That thereafter Merriam filed a final account, representing that the estate had been wholly administered and distributed, and that the sole heirs at law were the defendants Eugene Wellke, Amanda Katzung, and Alma J. Schmidt. That Merriam knew that Jeanette Fensky at the time of her death owned the real estate mentioned; that the same was distributable among the heirs at law of Ferdinand Fensky and defendants had no interest therein. That Merriam, well knowing all the facts, wholly omitted the real property from his inventory and accounts, and distributed a portion of the estate to the defendants Wellke, Katzung, and Schmidt.

On information and belief, it is alleged that Merriam, while pretending to act as administrator of the estate of Jeanette Fensky, was employed by and acted as attorney and agent for the defendants Wellke, Katzung, Loveland, Farnsworth, and Schmidt, with full knowledge of the rights of the complainants, and with the purpose and design of preventing them from securing their just share of the estate of their deceased brother, and has failed, refused, and neglected to further administer the estate, and pretends to deny the rights of the complainants in respect thereof. It is further alleged that all of the estate of Ferdinand Fensky was his separate property, and as such, upon the

death of his widow, the estate and its avails descended ratably to the surviving brothers and sisters of Ferdinand Fensky, and not to the sisters and brother of Jeanette Fensky, and that whatever right, title, or interest the defendants have in any of the property of Jeanette Fensky is subject to the claims of complainants as heirs at law of Ferdinand Fensky and of Jeanette Fensky; that complainants did not have any notice, knowledge, or suspicion of the truth respecting the amount, extent, and value of the estate of their deceased brother, nor of the frauds and fraudulent conduct of Campbell, Jeanette Fensky, and Merriam, until late in the summer of 1912, when one of the daughters of Louisa Pickens, while visiting in Los Angeles, accidentally secured access to the correspondence between Campbell and Jeanette Fensky, which disclosed a part of the truth relative to the estate of Ferdinand Fensky and the dealings of Campbell and Jeanette Fensky in reference thereto.

The complaint prays that an account be taken of the estate of Ferdinand Fensky, deceased, and that it be determined and adjudged by the court that the same was his separate estate; that the deeds of release and quitclaim, executed by the complainants to Jeanette Fensky, be declared fraudulent and void; that an account be taken of the estate of Jeanette Fensky, deceased, and that upon final hearing it be determined that the same is distributable among the heirs of Ferdinand Fensky, deceased; that it be determined by the court that the deeds under which the defendants Willke, Katzung, Schmidt, Farnsworth, Ferguson, and Loveland claim are void, and that those defendants have no right, title, or interest in the estate; and that the defendant Merriam be required to account to the complainants for their distributive shares of the estate of Jeanette Fensky, deceased, which came into his hands and was by him distributed to the defendants Wellke, Katzung, and Schmidt.

On August 14, 1915, the court granted the motion of certain of the defendants to dismiss the bill of complaint and entered an order dismissing the same, without prejudice, upon the grounds that the suit was barred by the laches of the complainants, and that the fraud alleged in the bill was intrinsic in character, being an imposition by false evidence, and all inquiry into such fraud was precluded by the final decree of distribution, which is conclusive as to the rights of heirs, legatees, or devisees. In a written opinion, filed at the time this order was entered, the court also calls attention to certain allegations of the complaint which are defective for uncertainty, although the action of the court in dismissing the complaint is based upon the two former grounds.

R. W. Kemp and Davis, Kemp & Post, all of Los Angeles, Cal., and D. R. Hite, of Topeka, Kan., for appellants.

Wm. J. Hunsaker, E. W. Britt, Leroy M. Edwards, and Joseph L. Lewinsohn, all of Los Angeles, Cal., and J. H. Merriam, of Pasadena, Cal., for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). 1. The statutory period in which an action may be brought in California for relief on the ground of fraud is three years. The appellees invoke this statute, and the analogous doctrine of laches in equity for a corresponding period, as a bar to this cause of action. But the cause of action in such case is not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake. Section 338, subd. 4, California Code of Civil Procedure. This last provision is derived from the principles of equity jurisdiction. Bailey v. Glover, 88 U. S. (21 Wall.) 342, 348, 22 L. Ed. 636.

Ferdinand Fensky died intestate in the county of Los Angeles, Cal., on August 7, 1903, leaving property in California and in Topeka, Kan.

The intestate died without issue, but he left a widow, Jeanette Fensky, and other heirs at law, including the complainants, who were his sisters. On September 9, 1903, M. T. Campbell was appointed administrator of the estate in Kansas, by the probate court of Shawnee county, and on October 15, 1903, Jeanette Fensky, the widow was appointed administratrix of the estate in California, by the superior court of Los Angeles county. On July 29, 1904, the complainant Louisa Pickens, for the sum of $1,000, executed and delivered to M. T. Campbell, the administrator of the estate in Kansas, for Jeanette Fensky, a release and quitclaim, releasing and conveying unto the said Jeanette Fensky all of the right, title, and interest of the said complainant in and to the property and estate of her deceased brother. On August 3, 1904, the complainant Johanna Schutt, for the like sum of $1,000, executed and delivered to the said Campbell, for Jeanette Fensky, a similar release and quitclaim releasing and conveying unto the said Jeanette Fensky all of the right, title, and interest of the said complainant in and to the property, assets, and estate of her deceased brother. Jeanette Fensky died on July 8, 1908, and on August 1, 1908, the defendant J. H. Merriam was appointed administrator of the estate of Jeanette Fensky.

The bill of complaint in this case was not filed until July 8, 1914. With the releases and quitclaims executed by the complainants in 1904 standing against their cause of action for alleged fraudulent acts in dealing with the estate of Ferdinand Fensky, the statute of limitations and the doctrine of laches would be a bar to this suit, but for the allegation in the bill that not until late in the summer of 1912 did the complainants, or either of them, have any notice or suspicion of the truth respecting the amount, extent, and value of the estate of their deceased brother, or of the frauds and fraudulent conduct of M. T. Campbell, Jeanette Fensky, and J. H. Merriam in dealing with the said estate in the matters charged in the bill of complaint. This discovery is alleged to have been made in July, 1912, when—

"one of the daughters of the complainant Louisa Pickens, while visiting in Los Angeles, Cal., accidentally secured access to the correspondence between the said M. T. Campbell and the said Jeanette Fensky, which disclosed to said daughter a part of the truth relative to the estate of Ferdinand Fensky, and the dealings of the said Campbell and the said Jeanette Fensky in reference thereto."

Referring to certain real estate located in the state of Kansas, which, it is alleged, the deceased, Ferdinand Fensky, had owned, and, prior to his death, had sold, and the proceeds of which belonged to the deceased as personal property, subject to distribution to the complainants and other heirs at law of the deceased, but which was fraudulently represented by the said Campbell and the said Jeanette Fensky to the complainants as not having been sold, and, under the law of Kansas, had descended directly to the widow, without complainants having any interest therein. It is alleged that the said real estate had been sold, although the deeds had not been delivered to the purchasers, and complainants had an inheritable interest in the proceeds as heirs at law of the said Ferdinand Fensky. It is further alleged that it was not until the early part of 1913 that the complainants had any

notice or knowledge that the deeds conveying the said real estate had not been delivered to the purchasers, or any notice or knowledge of the facts relating to the said estate.

Prior to the commencement of this action the complainants brought suit by petition in the district court of Kansas against the administrator of the administrator who administered upon the estate of Ferdinand Fensky in Kansas and his bondsmen to have the settlement of the latter estate set aside for fraud, and for an accounting of the assets with which he was chargeable. The cause of action in that case is identical with the cause of action in this case, except that the former relates to the estate in Kansas and the latter to the estate in California. In the district court there was a demurrer to the petition interposed by the defendants upon substantially the same grounds as the motion to dismiss the complaint in this case. The demurrer was overruled, and the defendants appealed. In the Supreme Court of Kansas these questions were reviewed, and the cause of action stated in the petition sustained (Pickens v. Campbell, 98 Kan. 518, 159 Pac. 21); the court holding, among other things, that in an action for relief on the ground of fraud, brought more than two years after its alleged perpetration, the petition, to be good against a demurrer, need not set out the manner of its discovery, and that constructive knowledge of the falsity of a statement that real estate, the record title to which stood in an intestate at the time of his death, had not been sold by him, is not a matter of law to be implied on the theory that it could have been discovered through inquiry from the purchasers. This decision disposes of these questions so far as they relate to the estate in Kansas and is persuasive as to the rules applicable to the same questions as they relate to the estate in California.

Returning, now, to the bill of complaint in this case, and its reference to certain deeds to real estate in Los Angeles county, Cal., executed by Jeanette Fensky in her lifetime in favor of certain of the defendants, without consideration, and delivered after her death to the grantees, and the knowledge of that fact by J. H. Merriam, the administrator of her estate, and his omission to account therefor in his inventory of the estate: It is alleged that it was not until early in 1913 that the complainants had any notice or knowledge that said deeds had not been delivered during the lifetime of the said Jeanette Fensky. It is further alleged that all of the estate of the said Ferdinand Fensky was his separate property, and as such, upon the death of the widow, the said estate and its avails descended ratably to the surviving brothers and sisters of the said Ferdinand Fensky. It is alleged that complainants believed the statements made by Jeanette Fensky, Campbell, and Merriam concerning the matters stated, and that, except for such representations, they would not have released the estate of Ferdinand Fensky from their just claims, but would have enforced the same.

The appellees contend that the suspension of the statute of limitations and of the analogous doctrine of laches until discovery by the aggrieved party of the facts constituting the fraud is qualified by the rule that knowledge of facts which would put a reasonably prudent person upon inquiry is equivalent to a discovery, and, with respect to the principles governing the statement of such a cause of action, cite

the case of Wood v. Carpenter, 101 U. S. 135, 140, 25 L. Ed. 807, where the Supreme Court said:

"In this class of cases the plaintiff is held to stringent rules of pleading and evidence, 'and especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see whether, by ordinary diligence, the discovery might not have been before made.' Stearns v. Page, 7 How. 819, 829 [12 L. Ed. 928]. * * * A party, seeking to avoid the bar of the statute on account of fraud, must aver and show that he used due diligence to detect it, and, if he had the means of discovery in his power, he will be held to have known it."

The appellees contend that under this rule the bill of complaint in this case does not sufficiently state a cause of action. On the other hand, the appellants contend that when the fraud, which is the foundation of the suit, has been concealed, or is of such a character as to conceal itself, the statute does not begin to run until the fraud is discovered by the party suing, and that the statement in the bill of complaint concerning the facts of concealment and discovery is sufficient. In support of this rule, the appellants cite the case of Bailey v. Glover, 88 U. S. (21 Wall.) 342, 347, 22 L. Ed. 636. In this case Mr. Justice Miller, speaking for the court, said:

"In suits in equity, where relief is sought on the ground of fraud, the authorities are without conflict in support of the doctrine that, where the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts from the other, the statute will not bar relief, provided suit is brought within proper time after the discovery of the fraud."

Concerning this rule, the learned justice said further (88 U. S. [21 Wall.] 349, 22 L. Ed. 636):

"And we are also of opinion that this is founded in a sound and philosophical view of the principles of the statutes of limitation. They were enacted to prevent frauds—to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself, until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure."

In Rosenthal v. Walker, 111 U. S. 185, 4 Sup. Ct. 382, 28 L. Ed. 395, the action was brought by the assignee of a bankrupt to recover the value of property alleged to have been fraudulently transferred by the bankrupt in violation of the provisions of the Bankrupt Act (Act July 1, 1898, c. 541, 30 Stat. 544). The defendant resisted recovery on the ground that the action was not brought within two years from the time when the cause of action accrued. The petition disclosed upon its face that the suit was brought more than four years after the cause of action arose, and more than three years after the appointment of the plaintiff as assignee. The plaintiff replied that the facts were fraudulently concealed and that the suit was brought within two years after they came to his knowledge. It was alleged in the petition that both the said Carney (the bankrupt) and the defendant (Rosenthal, to whom the bankrupt had transferred certain of his property), kept

concealed from the plaintiff (the assignee) "the fact of the said payment and transfer of the said aggregate sum of $30,000, * * * and * * * the fact of the sale, transfer, and conveyance of the said goods * * * and that he, the said plaintiff, did not obtain knowledge and information of the said matters, or either of them, until the 29th day of November, 1879, and then for the first time the said matters were disclosed to him and brought to his knowledge." The plaintiff relied upon Bailey v. Glover, supra, to sustain the cause of action upon the averment of concealment after the statute of limitations had run. The defendant relied upon Wood v. Carpenter, supra, to defeat the cause of action as stated in the complaint, notwithstanding the averment of concealment. The court sustained the cause of action, saying (111 U. S. 191, 4 Sup. Ct. 385, 28 L. Ed. 395):

"The case of Bailey v. Glover has often been cited by this court, but has never been doubted or qualified."

In Traer v. Clews, 115 U. S. 528, 6 Sup. Ct. 155, 29 L. Ed. 467, the same question was again before the Supreme Court. The allegations in the complaint as to concealment and discovery were:

"Mrs. Traer's connection with the transaction was studiously concealed from plaintiff and his assignor, and plaintiff had no knowledge of it previous to his discovery, September 24, 1879."

It was objected that there was neither pleading nor proof to avoid the bar, under the rule stated in Wood v. Carpenter. The court held that under the ruling in Bailey v. Glover, which had never been overruled, doubted, or modified by the court, the pleadings and evidence were sufficient, and the suit was not barred by the statute of limitations. In 19 Am. & Eng. Ency. 243, the rule is stated as follows:

"It has always been the rule in equity that the defendant's fraudulent concealment of a cause of action will postpone the running of the statute until such time as the plaintiff discovers the fraud; the defendant, having, by his own wrongdoing, prevented the plaintiff from instituting his suit, will not be permitted to take advantage of his own wrong by setting up the statute as a defense. This rule is provided for by statute in many of the states, but exists in equity courts independently of statutory provision."

See, also, 25 Cyc. 1214; Pickens v. Campbell, supra. This is the rule in California. Kane v. Cook, 8 Cal. 449; Currey v. Allen, 34 Cal. 254, 257.

[1] 2. Coming to the specific question, whether the appellants have been guilty of laches such as will defeat the cause of action stated in the bill of complaint, we find a broader field of inquiry than is involved in the running of a statute of limitations. As said by the Supreme Court in Galliher v. Cadwell, 145 U. S. 368, 372, 12 Sup. Ct. 873, 874 (36 L. Ed. 738):

"The cases are many in which this defense has been invoked and considered. It is true that by reason of their differences of fact no one case becomes an exact precedent for another, yet a uniform principle pervades them all. They proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that, because of the change in condition or relations during

this period of delay, it would be an injustice to the latter to permit him to now assert them. * * * Laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties."

[2] The appellants contend that a change of condition will be presumed, and that prejudice may be presumed from the lapse of time; that a change in position might have occurred; that an important witness has died; that a large part of the estate consisted of real property situated in Los Angeles and San Pedro; and that a marked increase in the value of the property will be presumed. It may appear to be a too strict adherence to the rules of procedure to hesitate to entertain the last-named presumption; but we think such matters are matters of defense, and should be established by proof upon the hearing of the case. We find nothing in the bill of complaint showing such a change of conditions in the property, or in the relations of the parties thereto, or such a lack of equity as would prevent a court of equity from granting appropriate relief.

[3] 3. The next question is whether the acts of fraud alleged in the bill of complaint are intrinsic or extrinsic to the matters determined by the superior court in the probate proceedings. The relief sought is, in effect, among other things: (a) An accounting by the defendant Merriam, the administrator of the estate of Jeanette Fensky, for so much of the estate as has come into his hands and for which no account has been rendered; (b) that the deeds of release and quitclaim executed by the complainants to the said Jeanette Fensky be declared fraudulent and void and of no effect; (c) that the deeds under which the defendants Wellke, Katzung, Schmidt, Farnsworth, Ferguson, and Loveland claim certain lands conveyed to them by Jeanette Fensky be declared invalid and void; and that neither of the defendants has any right, title, or interest whatever in or to the said estate or any part of the same. The leading case upon this question is that of United States v. Throckmorton, 98 U. S. 61, 65, 25 L. Ed. 93, cited by the appellees. In that case Mr. Justice Miller, speaking for the court, said:

"There are no maxims of the law more firmly established, or of more value in the administration of justice, than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy, namely, 'Interest reipublicæ, ut sit finis litium,' and 'Nemo debet bis vexari pro una et eadam causa.' * * * But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case; where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent."

The court then mentions a number of acts of this character, and concludes as follows:

"These and similar cases, which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing."

Because of the conduct of the defendants in concealing the facts concerning the estate, it appears that there has been no adversary trial or decision upon these issues; and we find nothing in the proceedings or decree of the superior court of Los Angeles county, as set up in the bill of complaint, to estop the complainants from having these matters inquired into, and the question of the alleged fraud determined by the court.

[4, 5] How far such a hearing may go is indicated in the case of Griffith v. Godey, 113 U. S. 89, 5 Sup. Ct. 383, 28 L. Ed. 934, where Mr. Justice Field, delivering the opinion of the court, said:

> "It is well established that a settlement of an administrator's account, by the decree of a probate court, does not conclude as to property accidentally or fraudulently withheld from the account. If the property be omitted by mistake, or be subsequently discovered, a court of equity may exercise its jurisdiction in the premises, and take such action as justice to the heirs of the deceased or to the creditors of the estate may require, even if the probate court might, in such case, open its decree and administer upon the omitted property; and a fraudulent concealment of property, or a fraudulent disposition of it, is a general and always existing ground for the interposition of equity."

The case of Lataillade v. Orena, 91 Cal. 565, 27 Pac. 924, 25 Am. St. Rep. 219, involved questions very similar to those involved in this case. The suit was against a guardian for an accounting of the estate of a minor. It was alleged in the complaint that from time to time after 1849 defendant sold certain property, belonging to plaintiff's estate, but for what sums plaintiff was not advised. In 1868 defendant sold certain cattle and ranchos, likewise belonging to plaintiff's estate, for which he received payment, and mingled the money with his own funds, and wrongfully and fraudulently converted the same to his own use, with intent to deprive the plaintiff of his share thereof. It was charged in the complaint that the defendant concealed the facts from the plaintiff, and wrongfully and fraudulently represented to him that his father died insolvent, and that he had no interest in the cattle and ranchos. The defendant, as guardian of the plaintiff, filed in court an inventory purporting to show all the estate of the ward, but did not include in the inventory any of the above-mentioned property, and, when he applied for and obtained a final discharge from his trust, he falsely stated in his petition and represented to the court that he had returned a full and true inventory of all the estate of the plaintiff which had come into his hands as guardian, and had paid over and delivered the same to the plaintiff. The plaintiff was born December 2, 1849, and became of age December 2, 1870. The suit was not filed until February 21, 1887, and called for an accounting from the guardian, mainly for the transactions in the sales of cattle and ranchos made in 1868. The defendant demurred to the complaint, substantially upon the grounds upon which the motion to dismiss was based in the present case. The court sustained the demurrer. This judgment was reversed in the Supreme Court, with directions to overrule the demurrer. The Supreme Court cited, in support of its decision, among others, the case of Griffith v. Godey, 113 U. S. 89, 5 Sup. Ct. 383, 28 L. Ed. 934. We do not find that this case has been overruled or in any way modified.

In Pickens v. Campbell, supra, the Supreme Court of Kansas, referring to the facts of this case, said:

"The defendants maintain that the order of settlement has the force of a judgment, and is not open to attack by the method here pursued. The allegation, however, is that the settlement was procured without an actual accounting as to the claims of these plaintiffs, by the use of a release of all demands against the estate (including that in California as well as that in Kansas) which had been obtained by intentionally false statements concerning facts which affected its value, particularly by the representation that the Kansas real estate had not been sold by Fensky, in which case the entire title would, of course, have vested in his widow upon his death. A fraud so accomplished we regard as extrinsic to the issue determined by the probate court, and therefore capable of forming a basis for setting aside its order. See Plaster Co. v. Blue Rapids Township, 81 Kan. 730, 106 Pac. 1079, 25 L. R. A. (N. S.) 861, note 106 Am. St. Rep. 640-642, 645-647."

We must accept these cases as stating the law applicable to this case, and we conclude, therefore, that the allegations of the bill of complaint are sufficient to sustain the cause of action.

Decree reversed, and the cause remanded for further proceedings in conformity with this opinion.