CUTTING v. WOODWARD et al.*

(Circuit Court of Appeals, Ninth Circuit.    February 3, 1918.)

No. 3152.

1. CORPORATIONS ⚖═320(11).—OFFICERS—FRAUDULENT ACQUISITION OF PROPER-
   TY FROM CORPORATION.
       Evidence *held* to sustain a finding that a transfer of corporate stock
   by a corporation to its president was obtained by fraud and without con-
   sideration.

2. COURTS ⚖═317—JURISDICTION OF FEDERAL COURTS—DIVERSE CITIZENSHIP
   —REARRANGEMENT OF PARTIES.
       In a stockholders' suit in a federal court against the corporation and
   its president, to set aside a fraudulent transfer of property to the
   president, where defendants join in the answer denying fraud, the cor-
   poration cannot be aligned with complainants to defeat the jurisdiction
   of the court.

3. CORPORATIONS ⚖═320(3)—STOCKHOLDERS' SUIT—LACHES—CONCEALMENT OF
   FRAUD.
       A stockholders' suit to set aside a fraudulent transfer of property by
   the corporation to its president *held* not barred by laches, where the bill
   alleged that the fraud was concealed by defendants, and not discovered
   by complainants until within a year before suit.

4. CORPORATIONS ⚖═89(5)—UNPAID SUBSCRIPTIONS—INTEREST—MUTUAL IN-
   DEBTEDNESS.
       The president of a corporation, who owed for his stock from the time
   of its issuance, cannot convert his indebtedness into one on account, and
   stop the running of interest, by making payments for the corporation
   from time to time, which were credited to him.

Appeal from the District Court of the United States for the North-
ern District of the Second Division of California;  William C. Van
Fleet, Judge.

Suit in equity by Henry J. Woodward and Francis A. Woodward
against the Monetary Trust Company and Henry C. Cutting.  Decree
for complainants, and defendant Cutting appeals.  Affirmed.

Douglas A. Nye and Albert H. Elliott, both of San Francisco, Cal.,
for appellant.

W. H. H. Hart, of San Francisco, Cal., for appellee Monetary
Trust Co.

John B. Clayberg and Welles Whitmore, both of San Francisco, Cal.,
for appellees Woodward.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge.  The appellees Henry J. and Francis A.
Woodward, for themselves and other stockholders of the Monetary
Trust Company, brought suit against that corporation and the appel-
lant to set aside as fraudulent and void an alleged purchase of 1,175
shares of the capital stock of the Point Richmond Canal & Land Com-
pany, made by the appellant from the trust company, and to require
the appellant to account for moneys of the trust company alleged to
have been fraudulently misapplied and misappropriated by him.  On
the trial the court below entered an interlocutory decree, holding the

purchase of stock to be fraudulent and void, and directing that the appellant account. An accounting was had, and thereafter final decree was entered commanding the appellant to restore said 1,175 shares of the capital stock of the Canal & Land Company to the name of the trust company, and adjudging that he pay the said appellees, for and in behalf of the trust company, $8,021.72 found by the master upon the accounting to be due from him, and the sum of $7,500 was allowed as attorney's fees for the prosecution of the suit, and was decreed to be a first lien upon the money judgment before granted, and upon said 1,175 shares of the capital stock of the Canal & Land Company. From that decree the present appeal is taken.

[1] The Monetary Trust Company was organized in 1904. The appellant subscribed to, but never paid for, 523 shares of its stock at $10 per share. About that time the Point Richmond Canal & Land Company was incorporated, and its promotion was undertaken by the trust company. In the spring of 1905, 1,175 shares of the Canal & Land Company were issued to the trust company in settlement for services and for moneys expended. The by-laws of the trust company provided for an executive committee of three, to consist of the president, the chief counsel, and a third member, to be selected by the directors, and the committee was authorized to conduct and carry on the business of the corporation, and was required to report its actions to the board of directors at each next ensuing meeting. Since 1905 the appellant has been the president and a director of the trust company. Gen. Hart was the general counsel of the company, and Wernse was the third member of the executive committee.

The appellant contended that in the fall of 1906 the other two members of the committee gave him an option to purchase the said 1,175 shares of stock in the Canal & Land Company at $1 per share. No written option could be produced in evidence, but Wernse testified that the option gave the appellant the right to purchase the stock at $1 per share, and that he thought it was to run six months from September 3, 1906. The minutes of the board of directors of the trust company show that a meeting was held on September 3, 1906, at which it was resolved that the annual meeting of the stockholders be held on September 29, 1906, at an hour and place named, and one purpose of the meeting was declared to be the taking into consideration whether or not the assets of the company should be disposed of. There was no evidence that notice of the meeting was ever given, and there was no record of the minutes of a stockholders' meeting on September 29, 1906. The secretary testified that no such meeting was ever held. There was introduced, however, a record of a stockholders' meeting held on November 10, 1906, recited to have been held "pursuant to adjournment," at which Wernse, who was the only member of the executive committee present, offered for ratification and approval "the following option given to H. C. Cutting," which motion was approved by the holders of a majority of the shares of the corporation. No option, however, was inserted in the minutes, or attached to the record. The minutes show also a meeting of the directors on December 20, 1906, at which Wernse presented the check of the appellant for $1,175,

and stated that the appellant desired to exercise his right under the option given him by the company, ratified and confirmed by the stockholders at their last meeting, to purchase 1,175 shares of the Canal & Land Company's stock at $1 per share, and that the motion was carried.

The evidence was that the appellant's check for $1,175 was presented at that meeting by Wernse, but was not cashed by the trust company; that shortly after that date the $1,175 was loaned to the appellant upon his promissory note, and $1,093 was also loaned to him upon his note; that neither of the notes was ever paid; and that the statute of limitations was permitted to run against both. Wernse testified that no meeting of the directors considered or authorized either of the loans. The court below found that the transfer of the 1,175 shares of stock in the Canal & Land Company was the merest sham, and was not made in good faith, that the intention was to transfer the stock to the appellant without any consideration whatever, and that the trust company having failed to act in the premises for its own protection, the appellees were entitled to recover the stock for the corporate benefit.

We find no ground to disturb the finding of the trial court. At no meeting of the stockholders was the question of the sale of the company's assets considered. The board consisted of five members, of whom three were a quorum. At the meeting of the stockholders of November 10, 1906, at which the option was offered for ratification and approval, it was necessary to vote the appellant's stock in order to constitute a sufficient representation of stock to hold the meeting, and to carry the resolution. At the following meeting of the directors on December 20, 1906, but three directors were present, and the appellant was counted a member of the board in order to make a quorum. At no meeting of the directors was a resolution passed authorizing either of the loans to the appellant. The court below found that during all this period the appellant had virtual control of the majority of the board of directors, and that they were ever ready to do his bidding. These transactions constitute actual and not constructive fraud.

[2] The trust company raises the question of jurisdiction, asserting that the company is not an adversary party to the plaintiffs in the suit, but is the real party in interest as plaintiff, and that consequently there is no diversity of citizenship. But this is not a case in which the trust company, although made a defendant, should be realigned as a plaintiff, as in Hamer v. New York Railways, 244 U. S. 266, 274, 37 Sup. Ct. 511, 61 L. Ed. 1125. Here the attitude of the trust company is hostile to the plaintiffs. It appeared in a joint answer with the appellant, and by the same counsel, and it denied the allegations of the bill and prayed for the dismissal thereof. The cause is therefore one in which plaintiffs, citizens of Illinois, bring suit against defendants who are citizens of California. Doctor v. Harrington, 196 U. S. 579, 25 Sup. Ct. 355, 49 L. Ed. 606; Venner v. Great Northern Railway, 209 U. S. 24, 28 Sup. Ct. 328, 52 L. Ed. 666.

[3] The appellant relies upon the defense of laches. The only assignment which brings that question before us is that the court below erred in overruling the motion to dismiss the complaint, one ground

of which motion was that it appeared from the complaint that the plaintiffs therein were guilty of laches, in that the sale of stock complained of occurred in October, 1906, and the suit was not brought until February 19, 1913, "by reason whereof the causes of action are barred." This presents the question whether, upon the allegations of the bill, the delay in bringing the suit constitutes laches. The complaint alleged that the plaintiffs, during all the times referred to therein, were citizens and residents of the state of Illinois; that the appellant purposely, intentionally, and fraudulently concealed his fraudulent practices and the performance of said acts and doings from the plaintiffs and other stockholders, by causing to be kept insufficient and inaccurate books of account and corporate records of the affairs of said company, and lulled the plaintiffs and other stockholders into seeming security by statements made by him that all the stockholders of the trust company should be jointly interested with him in all profits which might accrue out of any of his transactions with or pertaining to the business, property, and affairs of the trust company, and that he would hold the title of the 1,175 shares of stock of the land company in trust for the trust company; that the plaintiffs were made to believe that the acts of the appellant, so far as any of them were known to plaintiffs, were for the best interests of the trust company, and its stockholders, and that the appellant was honest in the performance of all such acts; that, acting under such belief, plaintiffs made no careful investigation of the records and transactions of the appellant, and that they did not discover his fraud and fraudulent practices until on or about the month of January, 1913; that the appellant was the president and a director of the trust company, and acted in a fiduciary capacity for and towards the plaintiffs.

Taking these allegations to be true, they were sufficient, we think, to show prima facie that the causes of action were not barred. In Bailey v. Glover, 21 Wall. 342, 22 L. Ed. 636, Mr. Justice Miller said:

"In suits in equity, where relief is sought on the ground of fraud, the authorities are without conflict in support of the doctrine that, where the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts from the other, the statute will not bar relief, provided suit is brought within proper time after the discovery of the fraud."

In that case the allegations of the complaint were that the defendants "kept secret their said fraudulent acts, and endeavored to conceal them from the knowledge" of the plaintiff, whereby he was "prevented from obtaining any sufficient knowledge or information thereof until within the last two years."

In Rosenthal v. Walker, 111 U. S. 185, 4 Sup. Ct. 382, 28 L. Ed. 395, the court reaffirmed the rule that where it is sought to obtain redress against fraud concealed by the defendant, or which, from its nature remains secret, the bar of the statute of limitations does not begin to run until the fraud is discovered, citing Bailey v. Glover, which case, said the court, "has been often cited by this court, but has never been doubted or qualified." We followed and applied the doctrine of those cases in Pickens v. Merriam, 242 Fed. 363, 155 C. C. A. 139.

In Townsend v. Vanderwerker, 160 U. S. 171, 186, 16 Sup. Ct. 258, 262 (40 L. Ed. 383), it was said:

"The question of laches does not depend, as does the statute of limitations, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under all the circumstances of the particular case, plaintiff is chargeable with a want of due diligence in failing to institute proceedings before he did."

[4] It is contended that interest was erroneously allowed on the money due from the appellant for his subscription to the 523 shares of the stock of the trust company. No assignment of error presents that question, but nevertheless we have given it consideration. The shares were subscribed in various amounts from April, 1904, to September, 1906, and $10 per share were to be paid therefor. The master found from the evidence that the shares were to be paid for in cash upon delivery. The shares not having been paid for when payment was due, interest was payable thereon at 7 per cent. per annum under the provisions of section 1917, Civil Code of California, which makes interest payable upon moneys at the rate of 7 per cent. per annum as they "become due on any instrument in writing except a judgment."

But the appellant contends that the matter falls within another provision of the same section, which provides that interest shall be paid on money due on a statement of account from the day on which the balance is ascertained, and this for the reason that in his dealings with the trust company various payments had been entered to his credit up to the time of the accounting before the master, and he asserts that interest can run only upon the balance found due at that time. The master allowed the appellant interest on all his payments from the time when made, and this was proper. From and after August, 1907, all the said payments were for state license taxes and other taxes and advertising. There was no mutual account. The appellant could not stop interest on the sums he owed on and prior to September 1, 1906, by thereafter making from time to time payments to the corporation or for its benefit.

The decree is affirmed.