No. 20,095.

LOUISA PICKENS and JOHANNA SCHUTT, *Appellees,* v. M. T. CAMPBELL, revived in the name of DONALD A. CAMPBELL, as Administrator with the Will Annexed, etc., et al., *Appellants.*

SYLLABUS BY THE COURT.

1. EXECUTORS AND ADMINISTRATORS—*Action to Set Aside Final Settlement—Fraudulent Concealment—Accounting.*   The heirs of an intestate may maintain in the district court an action to set aside an order of the probate court approving an administrator's final account because it was procured by the use of a release obtained from them by intentionally false representations concerning facts which affected the value of the rights they thereby surrendered, and to have an accounting with respect to the administration.

Pickens v. Campbell.

2. SAME—*Fraud—Limitation of Actions.* Such an action is based on fraud, and the statute of limitations applicable is that relating to actions for relief on that ground, running from the time of discovery.

3. NOTICE—*Constructive Knowledge—Record Title.* Constructive knowledge of the falsity of a statement that real estate, the record title to which stood in an intestate at the time of his death, had not been sold by him, is not as a matter of law to be implied on the theory that it could have been discovered through inquiry from the purchasers.

4. PLEADINGS—*Demurrer—Petition—Fraud.* In this state in an action for relief on the ground of fraud, brought more than two years after its alleged perpetration, the petition to be good against a demurrer need not set out the manner of its discovery.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed July 8, 1916. Affirmed.

*J. B. Larimer, Z. T. Hazen,* and *R. H. Gaw,* all of Topeka, for the appellants.

*D. R. Hite,* of Topeka, for the appellees.

The opinion of the court was delivered by

MASON, J.: Ferdinand Fensky, a resident of California, died intestate and without issue, August 7, 1903. By the laws of that state his heirs were his wife, who was entitled to half his property, five sisters, two brothers and a nephew, who were each entitled to one-sixteenth of it. The widow was appointed administratrix by a California court. M. T. Campbell was appointed administrator in Kansas. He filed an inventory showing something over $20,000 of personal property in his hands. He paid $1000 to each of the collateral heirs named and received from them writings releasing all claims against the estate in favor of the widow. These releases were filed in the probate court, together with a receipt from the widow for the remaining assets shown by the inventory, and in June, 1905, an order was made closing the estate. On May 15, 1914, two of the intestate's sisters brought an action against the administrator and his bondsmen to have the settlement set aside for fraud, and for an accounting of the assets with which he was chargeable. The administrator has since died and his representative has been substituted. A demurrer to the petition was overruled, and the defendants appeal.

In addition to the facts already stated the petition makes these allegations: Fensky had at one time owned various tracts of real estate in Kansas, including what is known as Fensky's Addition to Topeka, the record title to which stood in his name at his death, but which in fact he had sold, taking notes and contracts for the deferred payments, and holding executed deeds for delivery upon their payment. These notes, contracts and deeds, after the death of Fensky, were sent by the widow to the Kansas administrator, who inventoried none of them, but accounted for them to her. He induced the collateral heirs to execute the releases referred to by falsely representing to them that the Kansas real estate had not been sold and that the entire personal estate left by Fensky amounted to about $20,000. Other notes than those inventoried came into the hands of Campbell as a part of the estate and were by him collected, the proceeds being paid to the widow. The plaintiffs never knew of the existence of the contracts of sale or the uninventoried notes until after July, 1912.

1. The defendants maintain that the order of settlement has the force of a judgment and is not open to attack by the method here pursued. The allegation, however, is that the settlement was procured without an actual accounting as to the claims of these plaintiffs, by the use of a release of all demands against the estate (including that in California as well as that in Kansas), which had been obtained by intentionally false statements concerning facts which affected its value, particularly by the representation that the Kansas real estate had not been sold by Fensky, in which case the entire title would of course have vested in his widow upon his death. A fraud so accomplished we regard as extrinsic to the issue determined by the probate court and therefore capable of forming a basis for setting aside its order. (See *Plaster Co. v. Blue Rapids Township*, 81 Kan. 730, 106 Pac. 1079; Note, 106 Am. St. Rep. 640-642, 645-647.) In the United States district court for the southern district of California these plaintiffs brought an action for an accounting, founded on the same facts, against the successors in interest of Fensky's widow, who had died in the meantime. A motion to dismiss it was sustained. A copy of a memorandum opinion, which appears not to have been published, shows that the court concluded that the fraud com-

plained of was not of such a character as to warrant setting aside the probate court orders, because it was intrinsic with respect to the matter determined, inasmuch as the probate court presumably passed on all the things it would have had to consider if the releases had not been executed, including the extent and value of the estate, excepting that it was not required to decide the exact proportion to which the plaintiffs were entitled. The allegations in the two cases may not have been precisely the same. Here it would appear that the use of the releases, together with the receipt of the widow and domiciliary administratrix, made it unnecessary to make any decision concerning the disposal of the assets with which the ancillary administrator was chargeable. Various Kansas cases support the view that the order of the probate court is open to attack on the ground of the kind of fraud alleged, and that an equitable action in the district court is an appropriate proceeding for the purpose. (*Klemp v. Winter,* 23 Kan. 699; *Gafford, Guardian, v. Dickinson, Adm'r,* 37 Kan. 287, 15 Pac. 175; *Carter v. Christie,* 57 Kan. 492, 46 Pac. 964.) The joinder of the bondsmen as defendants is proper. (*Fincke v. Bundrick,* 72 Kan. 182, 83 Pac. 403.) The defendants urge that this is a collateral attack on the judgment, because other relief is sought than its vacation, and quote in support of the contention this and similar texts: "If the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important or even necessary to its success, the attack upon the judgment is collateral." (23 Cyc. 1063.) The meaning obviously is that in order for an action to constitute a direct attack on a judgment, its vacation must be sought as an end in and of itself and not as a mere incident to something else. The circumstance that additional relief is asked can not affect the matter.

The statute seems to contemplate that the net proceeds of the property of a nonresident intestate administered in this state shall, in accordance with the usual practice, be paid over to the foreign administrator. (Gen. Stat. 1909, § 3610.) But while the heirs may have had no absolute right to a distribution at the hands of any one except the domiciliary administratrix, the funds in the hands of the ancillary administrator

were subject to the control of the court and might in some cir-cumstances have been ordered paid directly to the final benefi-ciaries. (13 A. & E. Encycl. of L. 938, 940; 18 Cyc. 1235; 11 R. C. L. 441.) A direction to turn over all the assets to the widow, although she was also the domiciliary administratrix, if pro-cured by the use of a release obtained by fraud, can not be a bar to a further inquiry as to their proper disposition. The petition states grounds sufficient to justify setting aside the order of final settlement by virtue of its allegations of inten-tional fraud. (23 Cyc. 1022.) Ordinarily the right to the pur-chase price of land, contracted to be sold but not conveyed at the time of the vendor's death, passes to his personal repre-sentative and not to his heirs. (*Gilmore v. Gilmore*, 60 Kan. 606, 57 Pac. 505; 18 Cyc. 187; 11 R. C. L. 124; Note, 57 L. R. A. 646.) The petition contains nothing to suggest a different rule here, but if the evidence should show that the adminis-trator believed that the notes therein referred to followed the rule of real estate and became the property of the widow no statements made by him in good faith by reason of that be-lief, however incorrect from a legal point of view, would warrant a reopening of the administration. The extent of re-covery if the allegations of the petition should be proved is not involved in this proceeding.

2. The defendants assert that the action (as to the sureties at least) is one on the bond of the administrator and has been barred by the five-year statute of limitation (Civ. Code, § 17, subdiv. 5). The plaintiffs contend that it is one for relief on the ground of fraud, properly brought within two years after the discovery. (Civ. Code, § 17, subdiv. 3.) To bring it within the latter classification the fraud must be the basis of the ac-tion. (25 Cyc. 1178, 1182.) The mere fraudulent conceal-ment of facts giving rise to a right of action for damages for the violation of a contract has been held by this court not to suspend the statute. (*Railway Co. v. Grain Co.*, 68 Kan. 585, 75 Pac. 1051.) Elsewhere there is a difference of judicial opinion as to whether such conduct will postpone the running of the statute against an action at law (25 Cyc. 1214), while there is a general agreement that such is the effect with refer-ence to a suit in equity (19 A. & E. Encycl. of L. 243; 25 Cyc. 1214). In this state the statute of limitations applies equally

to legal and equitable cases. (*Chick and others v. Willetts*, 2 Kan. 384.) In the present action, however, the requirement that the fraud practiced must be the foundation of the action is fully met. The relief asked is essentially the setting aside of the releases because they were procured by fraud, the vacation of the settlement which was based upon them, and the restoration of the rights thereby denied. If the running of the statute was suspended as to the administrator it was suspended as to the bondsmen as well. (25 Cyc. 1186.)

3. The argument is also advanced that the facts pleaded show that by the exercise of reasonable diligence the plaintiffs could have learned of the matters alleged to have been concealed, and therefore must be deemed to have had constructive knowledge of them. The plaintiffs alleged in general terms that they had no means of knowning the facts, and we do not think any of the details stated are in necessary conflict with that allegation. It is suggested that inquiry of the purchasers of lots in the Topeka addition would have disclosed that they had bought them from Fensky and were indebted to him for the purchase price at the time of his death, but in the absence of anything to excite suspicion on the subject it can not be said as a matter of law that the plaintiffs were under an obligation to make such an investigation. In the federal case referred to the court reached a different conclusion in this regard, which obviously resulted from a less liberal interpretation of the allegations of a pleading than the practice in this state requires where the attack is by demurrer.

4. The contention is made that the petition is demurrable because it merely alleges that the plaintiffs did not know of the facts pleaded until July, 1912, and does not state how the discovery came about. The general rule appears to be that such a statement is required. (25 Cyc. 1418; *Hardt v. Heidweyer*, 152 U. S. 547.) But the contrary practice obtains in some of the states, including Kansas. (*K. P. Rly. Co. v. McCormick*, 20 Kan. 107; 25 Cyc. 1419.)

The order overruling the demurrer is affirmed.