No. 30,160.

THE CITY OF COFFEYVILLE, *Appellee,* v. SEWARD ESTEL METCALF
and THE NATIONAL SURETY COMPANY, *Appellants.*

(5 P. 2d 807.)

Opin-
ion filed December 12, 1931.

*Dallas W. Knapp,* of Coffeyville, and *Chester Stevens,* of Independence, for
the appellants.

*A. R. Lamb* and *C. A. Reed,* both of Coffeyville, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one by the city to recover from its
water and light collector, and the surety on his bond, money alleged
to have been collected and not paid to the city treasurer. Plaintiff
recovered, and defendants appeal.

The city of Coffeyville owned a system of waterworks. The
statute provided that the board of city commissioners should main-
tain, manage, conduct and control the waterworks and make all
ordinances, rules and regulations necessary for efficient manage-
ment. The statute also provided for appointment of a superin-
tendent of waterworks who should manage and control the system

under the direction of the board of commissioners. All officers, agents and employees when appointed by the board were under his immediate control. The statute further provided as follows:

"Said board may appoint a secretary of waterworks, who shall also be cashier, and it shall be his duty to keep regular sets of books for waterworks accounts, showing in detail the business transactions of his department. He shall have general supervision and charge of the office employees of said department under the direction of the superintendent. At the beginning of each month it shall be the duty of the secretary of waterworks to strike a trial balance and make a complete report to the board of commissioners, showing the transactions of the preceding month and the financial condition of the waterworks department. Such monthly reports shall also include a correct account of all collections, appropriations, expenditures, and approved claims entitled to payment." (R. S. 13-2403.)

"All revenues derived from the sale and consumption of water and from the management and operation of waterworks, shall be deposited daily, in the city treasury to the credit of the waterworks department, and be kept in a separate fund, to be known as the waterworks department fund; . . ." (R. S. 13-2408.)

Presumably to comply with the law, the city created the office of inspector and collector for the waterworks and electric light departments of the city, and prescribed the duties of such officer as follows:

"SEC. 4. It shall be the duty of the inspector and collector to render to the city council at its first regular meeting in each month, moneys received by him, the amount paid the city treasurer, and shall present therewith the receipt of the city treasurer for all moneys collected by him during the month covered by such report. . . .

"SEC. 5. It shall be the duty of the inspector and collector . . . to inspect all hydrants where water is being used by any private or public consumer, to ascertain the quantity of water used and the amount due from each consumer to the city, to collect from each and every consumer the amount due from each consumer to the city . . ."

The result was, the inspector and collector was in fact the officer called in the statute secretary of waterworks and cashier, and was charged with performance of the duties prescribed by statute. The petition in this case was framed on that theory, and the jury was instructed on that theory. The statute and the ordinance required the officer to give a bond.

Defendant Seward E. Metcalf was appointed water and light collector on April 17, 1923, and gave bond on April 21, 1923. The bond recited that he was appointed for a term of two years, beginning April 3, 1923, and ending April 3, 1925.

The action was commenced on December 16, 1929, to recover the sum of $380 and interest. An answer was filed, but no reply was filed. Between January 7, 1930, and June 18, 1930, the books and records of the water and light department were audited. Schedule 5-A of the auditor's report showed what he denominated unsettled credits, April 3, 1923, to April 3, 1925, consisting of 168 items, amounting to $3,762.20. On July 21, 1930, plaintiff filed an amended petition based on the auditor's report, a copy of which was attached to the petition.

Defendant Metcalf answered that his authority was limited to conduct of the affairs of his office according to a system then in use, under which he was denied right to supervise, direct, employ, and discharge; that other employees of equal or greater rank had keys, the combination to the safe, and access to cash, books and records; that such persons collected accounts, worked on books, and in general possessed the same authority defendant had; and that if payments were made by water and light consumers which did not reach the city treasurer, such payments were not made to defendant, and did not come into his possession. The answer also stated that soon after defendant's appointment he discovered the books and cash were out of balance, notified his superiors of the fact, and urged them to assist defendant in locating the cause, to ascertain and discover whether the failure to balance was due to shortage in cash. The answer further pleaded the two- and three-year statutes of limitation.

The bonding company filed an answer, which need not be noticed further than to say the two- and three-year statutes of limitation were pleaded. Metcalf's duties were not fixed by the bond but by law. The bond was given as security for performance of duty, and the same statutes of limitation apply to recovery against both Metcalf and his surety.

There was a trial by jury. Defendants demurred to plaintiff's evidence, and offered no evidence in their own behalf.

The petition properly pleaded that Metcalf's duty to account arose under the statute and ordinance, but alleged Metcalf concealed the fact that he was short in his accounts, and the city did not learn of the shortage until December 1, 1929. No manner, means or method of concealment was disclosed. The court instructed the jury as follows:

"You are instructed that one of the duties of the collector required by stat-

ute was the payment of money, checks, drafts or credits which came into his hands by virtue of his office daily to the city treasurer, and that the liability arose when he failed or refused to perform such duty and the cause of action accrued on said date, . . . and if you further find that more than three years elapsed from the date of such failure or neglect on the part of the collector and the date this suit was instituted, then you are instructed that each and all of said items are barred by the statute of limitations of the state of Kansas, and your verdict should be for the defendants, unless you find and believe that the items constituting said shortage were concealed by the defendant Metcalf."

The qualification in the instruction relating to concealment is not found in the statute, which reads:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: . . .

"*Second.* Within three years: An action upon contract, not in writing, express or implied; an action upon a liability created by statute, other than a forfeiture or penalty." (R. S. 60-306.)

The district court had no power to enlarge the statute by attaching an exception.

"The mere fraudulent concealment of facts giving rise to a right of action for damages for the violation of a contract has been held by this court not to suspend the statute. (*Railway Co. v. Grain Co.,* 68 Kan. 585, 75 Pac. 1051.)" (*Pickens v. Campbell,* 98 Kan. 518, 522, 159 Pac. 21.)

Concealment of a cause of action arising on a statute no more tolls the statute of limitation than concealment of a cause of action arising on contract, mentioned in the same subdivision of the statute. The decision in *Railway Co. v. Grain Co.,* supra, was rendered in 1904. The revisions of the code in 1909 and 1923 made no change in the statute.

There is an exception in the subdivision of the statute relating to actions based on fraud, but the making of that exception implies that others are forbidden:

"The enumeration by the legislature of specific exceptions to a statute of limitations by implication excludes all others." (*Railway Co. v. Grain Co.,* 68 Kan. 585, syl. ¶ 1, 75 Pac. 1051.)

Likewise an allegation of concealment does not convert an action based on a statute into one based on fraud.

In the opinion in the case of *Perry v. Wade,* 31 Kan. 428, 2 Pac. 787, this court said:

"Of course, the mere concealment of a cause of action or the concealment that a cause of action had ever accrued or ever had any existence, does not of

itself bring the case within the above-quoted provisions of subdivision 3 in section 18 of the civil code [relating to fraud], nor does it prevent the statute of limitations from running." (p. 431.)

In the opinion in the case of *Railway Co. v. Grain Co.*, supra, this court said:

"The fraudulent concealment that a right of action for the breach of a contract exists does not change the nature of the action nor shift it into the class named in subdivision 3 of section 18 of the civil code [relating to fraud]." (p. 589.)

In the case of *McMullen v. Loan Association*, 64 Kan. 298, 67 Pac. 892, the secretary of a building and loan association and the surety on his bond were sued for failure of the secretary to account for money he received. The syllabus reads:

"Where an officer and agent misappropriates money intrusted to him, and fraudulently conceals his defalcations, the statute will not begin to run until the discovery of the fraud and of the breach of the condition of the bond." (¶ 5.)

The high lights of this syllabus are misappropriation of money, fraudulent concealment, and fraud. The facts were stated in the petition in the case, and besides charging conversion of funds by the secretary to his own use, the petition charged the making of false entries in books, failure to make entries in books, and the making of false entries and false statements in reports of the transactions of the secretary, which the board of directors believed were true. We have no such case here.

The court instructed the jury as follows:

"The laws of the state of Kansas provide that an action for relief on the ground of fraud may be commenced within two years—the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud. You are instructed that the misappropriation or embezzlement of the funds of the water and light department of the city of Coffeyville, if any, constitutes a fraud upon the city of Coffeyville, and that said city is entitled to commence an action for the recovery of the same at any time within two years from the time that said city discovered such fraud."

The petition afforded no justification or excuse for instructing the jury on the subject of misappropriation or embezzlement. There was no charge of intent to appropriate to Metcalf's own use money he received, or appropriation of money he received to the use of himself or anybody else. There was no charge of embezzlement, or statement of facts tending to show misconduct involving or implying criminal or wrongful intent. The gravamen of the petition was not even fraud, but was simple failure to pay to the city treas-

urer money received. If a petition undertakes to charge dishonesty, the petition ought to be honest about it.

It is not necessary to analyze the petition, and for present purposes it may be assumed the ground of the action was fraud, and the city had two years after discovery of the fraud in which to commence the action. The court instructed the jury as follows:

"You are further instructed that in order to constitute notice to the city of Coffeyville of the embezzlement or misappropriation of the funds of the water and light department it was necessary for said city to have notice of the specific item or kind of fraud that was being practiced upon it, if any, and that notice to the city of shortages in the making of change or in the cash register balance of the water and light collector would not be notice to the city of collection made by the defendant or his employees which were not properly accounted for to the city."

This instruction did not state the law. It is not debatable that notice in an action of this character is the same as notice in any case in which actual knowledge is not required. Discovery of the fraud is discovery of such facts as would, on reasonably diligent investigation, lead to knowledge of the fraud.

When Metcalf became collector there was an old cash register in his office. It did not give all the details of a day's business. Two or three months after he took office a new adding machine or cash register was purchased. The new one was purchased at his request because of shortages in his office of which he complained. He also asked the superintendent to change the combination of the safe, and the superintendent made the change.

When reports of meter readers came in they were entered on an original, permanent record of the office, the customers ledger. The amounts due from customers were then computed from the meter readings, and the customers' ledger accounts were charged with the amounts. Postal-card statements on printed forms were then mailed to customers. When a card was brought back or mailed back with money to pay the bill, it was passed through the machine. The machine cut the card into two parts. One part would be stamped as a receipt for the customer. The stub would drop into the machine. Afterwards the stubs would be taken out and posted to the customers ledger. After stubs had been posted to the customers ledger, they were put in the safe. Later they were posted to the cash book. Settlements were made by the collector with the city treasurer according to the cash book. Each account in the customers ledger was given a service number. The entries in the cash book contained the same numbers, the amounts of money collected,

the dates, and showed in detail, item by item, the items settled with the city treasurer. The ledger showed the account between collector and customer, the cash book showed the account between collector and city treasurer, and the ledger and cash book constituted the set of books which the law required the collector to keep. There was no evidence that the adding-machine rolls or adding-machine totals of money paid in were preserved, or of how often the cash register was cleared or new totals made. The books were not written up from the machine rolls or totals, and they disclosed no balances of money.

Nobody testified to shortages from making change. It was known to everybody in the office that there were shortages in small amounts, ranging from 10 cents to 50 cents. Doubtless some of these discrepancies occurred in making change. But there was an admitted shortage of $50 which was called to the attention of the superintendent, and was known to others, and it is not likely that shortage occurred in making change.

The result is that instead of aiding the jury in its consideration of notice, the instruction relating to shortage in making change and cash-register balance, tended to divert the jury's attention from facts which, under a correct statement of the law, would constitute notice.

When Metcalf became collector there were three clerks in the office, all employed by the board of commissioners. No one was specially assigned to operate the cash register, all of the clerks would take in money, put cards through the machine, post to the ledger, take cards out of the safe, and post to the cash book. Sometimes a clerk settled with the city treasurer. The office of the superintendent of waterworks adjoined that of the collector, and on occasion the superintendent did all these things. There were some 9,000 customers' accounts on the ledger. Whether following the mailing of cards all of the cards always came back and passed through the machine, or whether a percentage of payments were made and credited on the ledger without return of card, was not shown.

Soon after Metcalf took office he discovered shortages. He complained to the superintendent, who talked to the mayor, and he complained to two of the commissioners, one of whom was public utilities commissioner, with jurisdiction over the water and light department. Metcalf searched for shortages. One of the clerks helped him hunt for the $50 item. The superintendent and Metcalf searched for that and other items. Metcalf was so concerned about

the shortages he asked for an audit. The subject was discussed at a meeting of the board of commissioners, and the public utilities commissioner promised an audit.

The public utilities commissioner testified the board of commissioners did order an audit. He thought the audit was ordered in 1923. He testified an audit was made while he was commissioner, and an audit was made of the city treasurer's books for the period from May 1, 1923, to September 30, 1925. The report merely showed the receipts and disbursements of the city treasurer, and a proper keeping of her accounts. The auditor testified the customers ledger in the water and light department might have been examined in a few instances merely for the purpose of trial balances, but individual items were not checked.

In the petition Metcalf was charged with the following typical shortages, which occurred in May, June and July, immediately following his appointment:

| Account No. | Name. | Date credited. | Amount. |
|---|---|---|---|
| E 620 | North Star Mfg. Co | 5- 7-23 | $9.60 |
| E 24 | G. N. Upham | 5- 8-23 | 20.20 |
| E 28 | Andy Curry | 5- 9-23 | 9.27 |
| E 702 | Isham Hdw. Co | 6-20-23 | 16.32 |
| E 2 | Coffeyville Merc. Co | 7- 2-23 | 15.00 |
| E 605 | Upham & Hess | 7- 6-23 | 10.23 |
| E 621 | J. G. Whitehead | 7- 9-23 | 4.80 |
| E 1424 | Dennison Clay Co | 7-16-23 | 15.76 |
| E 657 | Robinson Pkr. Co | 7-23-23 | 20.04 |

The fact is Metcalf was charged in the petition with two other shortages, occurring in April, before he took office, discoverable and discovered as the others were:

| | | |
|---|---|---|
| Miller House | 4-2-23 | $19.79 |
| Belt's Clothing Co | 4-6-23 | 25.05 |

All the foregoing shortages, as all others charged against Metcalf, were revealed by an audit made in 1930. They were revealed by the simplest process imaginable. The customers ledger showed the items received, the cash book showed the items paid to the city treasurer, and the ledger and cash book were, as the auditor said, tied together. Item on one book was checked against corresponding item on the other book. Had this been done when Metcalf demanded an audit, not only would the existing shortages now charged against him have been identified before they became stale, but precisely the same class and character of shortages existing when he took office would have been disclosed.

Summarizing briefly, we have shortages actually existing in the collector's accounts, beginning soon after his appointment. We have not merely notice, but notification by the collector to those having authority, that shortages existed. We have acceptance by those in authority of the notification as authentic. We have a demand by the collector for an audit of the books, the sure way to find shortages. We have recognition by those in authority of the fact that the road to knowledge was an audit of the books. There lay the books, required by law to be kept, and actually kept, showing every transaction just as it was "discovered" in 1930. Finally an audit was made, embracing substantially Metcalf's term of office. The audit was, however, of the treasurer's office, and not of the collector's office, where everybody knew trouble existed. When the report of the audit of the treasurer's books was filed in 1925, all shortages occurring during Metcalf's term of office stared at the city from the face of the books. It is idle to debate whether the fraud was discovered within the purview of the two-year statute of limitation, and action on the entire account set up in the petition was barred.

The judgment of the district court is reversed, and the cause is remanded with instruction to sustain the demurrer to plaintiff's evidence, and to render judgment for defendants for costs.