No. 41,472

In the Matter of the Estate of Maggie Taylor, also known as Margaret E. Taylor, Deceased. (CHARLEY TAYLOR, *Appellant*, v. ELISHA SCOTT, Executor, *Appellee*.)

(345 P. 2d 1028)

Opinion filed November 7, 1959.

*Elmer C. Jackson, Jr.,* of Kansas City, argued the cause, and *Myles C Stevens,* of Kansas City, was with him on the brief for the appellant.

*I. F. Bradley, Jr.,* of Kansas City, and *Samuel C. Jackson,* of Topeka, argued the cause, and *Elisha Scott, Charles S. Scott,* and *John Scott,* all of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is an appeal from a judgment construing a will.

The judgment of the district court is in the form of a written opinion. It sets forth the issues involved, the rulings thereon, and most of the salient facts on which the court based its decision. For that reason such opinion will be quoted at length. It reads:

### RULING & JUDGMENT OF THE COURT

"Gentlemen:

"The records in this case disclose that on the 2nd of January, 1953, Maggie Taylor, also known as Margaret E. Taylor, deceased, made her will, which has been admitted to probate in the Probate Court of Wyandotte County, Kansas, and in said will there is Paragraph No. 4 which reads as follows:

" 'It is my will and I direct, in the event I have not disposed of the property at 2323 Elmwood Street, Kansas City, Kansas, at the time of my death, that it go into and become a part of the assets of my estate, and that same be sold and the funds derived from the sale by distributed as per the laws of descents and distribution of the State of Kansas.'

"It is stipulated and agreed that the said Maggie Taylor, also known as Margaret E. Taylor, died on the 15th day of March, 1953, leaving as her sole and surviving heir, her husband, Charley Taylor.

"It is further stipulated and agreed that on the 14th day of June, 1951, Maggie Taylor, also known as Margaret E. Taylor, entered into an option contract with Edward E. Gore and Othella Gore, husband and wife, to sell Lots 49 and the east 15 feet of Lot 50, in Coburn's Second Addition, now in and a part of Kansas City, Kansas, for $4,065.45. That said property was commonly known as 2323 Elmwood Street, Kansas City, Kansas, and the same property referred to in Paragraph 4 of the will.

"The questions of law to be decided by this court on this appeal are:

"(*a*) Whether or not the property above described, and known as 2323 Elmwood Street, Kansas City, Kansas, was 'disposed of' within the meaning of Paragraph 4 of the will referred to herein, in the light of all the stipulated facts contained herein; and

"(*b*) Whether the proceeds collected to date and hereafter collected under the option contract should go to the assets of the estate or the surviving husband; and

"(*c*) If the said option contract is sold under the order of the Judge of the Probate Court of Wyandotte County, Kansas, then whether the proceeds of such sale should go to the assets of the estate or the surviving husband.

"It is stipulated and agreed that on the 23rd day of February, 1957, after a petition duly filed by the executor in the Probate Court of Wyandotte County, Kansas, the interests of the deceased in the above described real property was appraised as $2,548.72, and on the 25th day of March, 1958, said option contract was ordered sold, but as of now it has not been sold.

"The Court rules as a matter of law, as follows:

"(*a*) That the option contract referred to herein did dispose of the real property known as 2323 Elmwood Street, Kansas City, Kansas, within the meaning of Paragraph 4 of the will.

"(*b*) That the proceeds collected to date or hereafter collected under said option contract should go to the assets of the estate to be distributed to the other devisees and legatees set out in the will and not to be treated as specific bequest to the surviving husband.

"(*c*) If the said option contract is sold by the Probate Court of Wyandotte County, Kansas, then the proceeds of such sale should go to the assets of the estate to be distributed to the other devisees and legatees set out in the will and not be treated as a specific bequest to the surviving husband.

"Based upon the above rulings upon the law, the Court renders judgment according.

"DATED: DECEMBER 24, 1958."

The contract and will referred to in the foregoing opinion were before the trial court during the trial. They disclose additional and informative facts pertinent to the issues which should be mentioned. Hence, brief reference will be made thereto.

The will contains ten paragraphs, hereinafter identified by numbers. For present purposes No. 1 relates to payment of funeral expenses; No. 2 specifically devises the family home, the household furniture and a 1946 Chevrolet Automobile to the decedent's husband; No. 3 bequeaths $500 to Mamie Wilkerson, a cousin; No. 4 is quoted in the trial court's opinion and requires no further reference; Nos. 5, 6, 7, 8 and 9 contain specific bequests to certain religious and charitable organizations, namely, St. Paul A. M. E. Church of Kansas City, Kansas, Douglass Hospital, Kansas City, Kansas, Florence Crittenton Mission (Colored), Topeka, Kansas, Guardian Angel Home for Orphans, Leavenworth, Kansas, and Johnson Rest

Home, Topeka, Kansas, respectively; and No. 10 is a residuary clause, bequeathing and devising all of the testatrix' remaining property to her cousin, Mamie Wilkerson.

We are not disposed to burden our reports with details of the lengthy contract entered into between Margaret E. Taylor, otherwise known as Maggie Taylor, and Edward E. Gore and Othella V. Gore, husband and wife, on June 15, 1951. It suffices to say a careful analysis of that instrument discloses that, notwithstanding it is titled "Option Agreement," it is an agreement similar in form and substance to the agreements involved in our former decisions of *Marquez v. Cave*, 134 Kan. 374, 5 P. 2d 1081; *Ditzen v. Given*, 139 Kan. 506, 32 P. 2d 448. And added that such contract shows on its face that the price to be paid for the Elmwood Street property was $4,065.45, payment of which was to be made by the Gores by a substantial down payment, the receipt of which was acknowledged, and the remainder of the principal sum to be paid in equal installments from month to month until fully paid, whereupon the property was to be conveyed to the Gores by a warranty deed warranting the title to said premises as of the date of the agreement; that, at or about the time of the execution of the contract, the Gores were given possession of the involved real estate; and that thereafter, without any steps having been taken to dispossess them or otherwise declare the contract at an end, they continued to make the installment payments, due under its terms, to the decedent up to the date of her death. Indeed, from payments endorsed on the contract, it appears they continued to make additional installment payments on the contract until March, 1957, at which time, it must be assumed, the amount required to complete payments thereon was $2,548.72, as indicated in the trial court's opinion.

Insisting that the involved agreement must be regarded as an option contract, the first question raised by appellant is—What was the significance of the contract entered into by Margaret E. Taylor and the Gores before she made her will?

Having carefully analyzed the contract and determined that, when compared with those involved in the two cases to which we have heretofore referred, there is no material difference in its terms and provisions, we have little difficulty in concluding such contract must be construed as an executory contract for the sale of real estate.

See *Marquez v. Cave*, 134 Kan. 374, 5 P. 2d 1081, which holds:

"In an action to determine the rights of parties under a contract with respect to real property, the record is examined, and it is *held:* The trial court correctly

construed the contract as one for the sale of the real property rather than a pure option to purchase." (Syl. ¶ 1.)

And in the opinion said:

"Appellants complain of this finding and contend that the contract, by its wording, was a mere option, such as the court had before it in *Caldwell v. Frazier*, 65 Kan. 24, 68 Pac. 1086, and allied cases. The point is not well taken. Clearly the contract is not a simple option. It not only fixes the price of the property, but gives credit 'on the purchase price' of the $400 down payment, provides that the monthly payments in excess of interest shall reduce the sum to be paid, and for the ultimate conveyance of the property when full payment has been made. It is true that it is headed 'Option Agreement,' and contains many words and phrases suitable or common in pure option agreements, but these do not destroy the obvious purpose and nature of the contract. The contract should have been drawn fairly to represent the transaction in which the parties were engaged. To mingle into it terms and expressions with respect to an option foreign to the real purpose of the parties tends only to confusion. . . ." (p. 376.)

See, also, *Ditzen v. Given*, 139 Kan. 506, 32 P. 2d 448, where it is held:

"In an action for money and for specific performance of a contract for the sale of real estate, the contract is examined, and it is held that it is a contract for the sale of real estate even though it is called an option to purchase." (syl. ¶ 1.)

For another decision, somewhat different from the standpoint of facts and circumstances here involved but nevertheless supporting the conclusion just announced, see *Farrell v. The Federal Land Bank of Wichita*, 175 Kan. 786, 267 P. 2d 497, where it is said:

"Obviously sensing that it might strengthen his position the first contention raised by appellant is that the involved contract is unilateral in nature and must be construed as a contract to sell rather than one of purchase and sale. We think this question was determined adversely to appellant's contention in *Marquez v. Cave*, 134 Kan. 374, 5 P. 2d 1081; *Ditzen v. Given*, 139 Kan. 506, 32 P. 2d 448. Be that as it may, a review of the contract and its provisions, particularly those contained in the mutual covenants and reciprocal promises heretofore described, makes it clearly appear that agreement was bilateral in character and convinces us it must be construed as a contract for the purchase and sale of the real estate. The fact the involved agreement contains provisions for its forfeiture for non-payment or a breach of its other terms and conditions does not warrant a contrary conclusion as appellant suggests. A careful analysis of the opinion in *Marquez v. Cave*, supra, discloses that the contract there involved contained provisions of like import." (pp. 789 & 790.)

And see *Home Owners' Loan Corp. v. Jaremko*, 146 Kan. 328, 330, 331, 69 P. 2d 1099.

It cannot be gainsaid that an executory contract providing that the owner of property will convey certain real estate to another

by warranty deed warranting the title thereto as of the date of the contract, upon the making and completion of the installment payments therein set forth, has placed that property out of his control to such an extent that it has been disposed of. The fact, as we have seen, such an agreement contains provisions for its forfeiture for nonpayment or a breach of its other terms and conditions does not warrant a contrary conclusion as is urged by appellant. Therefore we hold that the trial court did not err in its ruling that as a matter of law the involved contract disposed of the real property known as 2323 Elmwood Street, Kansas City, Kansas, within the meaning of Paragraph 4 of the will.

In reaching the foregoing conclusion we do not overlook, but reject, appellant's further contention that such ruling is contrary to the obvious expressed wishes and intention of the testatrix. There was no extrinsic evidence adduced on this point and, since, we have heretofore indicated, Mrs. Taylor had disposed of the property described in Paragraph 4 of her will at the time of her death the terms and provisions of such paragraph must be regarded as inoperative. Therefore such contention lacks merit and cannot be upheld because, as we read the will, the testatrix, under other paragraphs of that instrument, made provision for the disposition of all property owned by her on the date of her death in clear and unambiguous language. In such a situation the established rule of this jurisdiction is that a construction of the will is unnecessary, and it must be enforced in accord with its terms and provisions (see e. g., *In re Estate of Blank*, 182 Kan. 426, 430, 320 P. 2d 775; *In re Estate of Reynolds*, 173 Kan. 102, 244 P. 2d 234; *In re Estate of Hauck*, 170 Kan. 116, 223 P. 2d 707).

Finally it is urged that the trial court erred in holding (1) that the proceeds collected to date or hereafter collected under the involved contract should go to the assets of the estate to be distributed to the other devisees and legatees set out in the will and not be treated as a specific devise to the surviving husband and (2) that if such contract is sold by the probate court, then the proceeds of such sale should go to the assets of the estate to be distributed to the other devisees and legatees set out in the will and not be treated as a specific bequest to the surviving husband. These questions can be considered together.

In *Pickens v. Campbell*, 98 Kan. 518, 522, 159 Pac. 21, it is said that ordinarily the right to the purchase price of land, contracted

to be sold but not conveyed at the time of the vendor's death, passes to his personal representative and not to his heirs. Such is the general rule. See 55 Am. Jur., Vendor and Purchaser, pp. 785, 786 § 359, which reads:

"The equitable principle that the interest of the vendor under an executory land contract is to be regarded as personalty has been frequently applied in the distribution of a deceased vendor's estate; accordingly, it is held that the vendor's interest in the land which he has contracted to sell passes to his personal representative as personalty, together with the right to the unpaid purchase money and securities therefor. . . ."

Application of the foregoing rule means that proceeds received or to be received under the contract are to be distributed in accord with operative provisions of the will and that the trial court's rulings on the two questions last above mentioned were proper and must be upheld.

After a careful and extended examination of the record we find nothing in appellant's contentions or in arguments advanced with respect thereto which either permits or requires a reversal of the trial court's judgment. It is therefore affirmed.