No. 48,152

In the Matter of the Estate of Wallace P. Hills, Deceased.

(564 P.2d 462)

Opinion filed May 14, 1977.

*Harold L. Haun,* of Council Grove, argued the cause and was on the briefs for the appellant and cross-appellee, Ethel P. Fritzler.

*David H. Heilman,* of Council Grove, argued the cause and was on the brief for the appellee, Lawrence C. Veerhusen.

*Philip C. Lacey,* of Lehmberg, Bremyer, Wise & Hopp, of McPherson, argued the cause, and *Robert W. Wise,* of the same firm, was with him on the briefs for the appellee and cross-appellant, Edna I. Hills.

No appearance on behalf of appellee, Marlin Brown, executor.

The opinion of the court was delivered by

SCHROEDER, J.: The question presented by this appeal is whether real estate devised by the testator in his will was equitably converted in the testator's lifetime and passed under the provisions of his will as personal property.

Wallace P. Hills, a resident of Morris County, Kansas, was married to Edna I. Hills. No children were born to this marriage or adopted. On the date of Mr. Hills' marriage he owned, in his name alone, the following described real estate:

"The Northeast Quarter (NE ¼) of Section Fifteen (15), Township Sixteen (16) South, Range Four (4), East of the 6th P.M., Dickinson County, Kansas."

This quarter section of land (hereafter referred to as the Dickinson County land) was all the real estate owned by Wallace P. Hills during his life which is material to this litigation.

On September 29, 1967, Mr. Hills executed his last will and testament to which Edna I. Hills consented. In addition to directing the payment of his just debts and the appointment of Marlin Brown as executor, the will provided:

"SECOND: I give and bequeath all of the rest and residue of any personal property owned by me as assets of my estate, unto my wife, Edna I. Hills, to her own absolutely.

"THIRD: I give and devise all of my real estate to my wife, Edna I. Hills, for and during her natural life, and if it shall become necessary for her support in the manner to which she is accustomed during my lifetime, she shall have full power to sell and convert the same or any part thereof into cash and to consume the proceeds of such sales. Upon the death of my said wife, what remains of said real estate or said proceeds, if she shall have exercised said power of conversion as aforesaid, shall vest in my nephew, Lawrence C. Veerhusen, in fee simply, absolutely, subject only and providing that he first pay the sum of $1000.00 to each of my three nieces, Ethel Mae, Dorothy, and Viola, all being a daughter of my deceased sister, Mae M. Veerhusen. Title to said real estate or said proceeds shall not pass to my said nephew until full payment is made to each niece as herein provided. Should my nephew fail and refuse to make such payment to each niece within ninety days from the date of my death, then and upon that event, I give, bequeath and devise said real estate or said proceeds according [to] the Kansas law of descent and distribution had I been single and not married at the date of my death."

Briefly stated the decedent gave all his personal property to his wife by paragraph SECOND, and all his real estate to his wife for life with a power of disposition in paragraph THIRD.

Under Kansas law Wallace P. Hills' heirs, had he been single and not married at the date of his death, would be his sister, Ethel P. Fritzler, and the children of his previously deceased sister, Mae M. Veerhusen. Those children are Lawrence C. Veerhusen, Ethel Mae Henning, Dorothy Ring and Viola Furman.

On September 26, 1969, almost two years after the will was executed, Wallace P. Hills and Edna I. Hills entered into a contract of sale for the Dickinson County land with Roy C. Diepenbrock and Emmy Diepenbrock. That agreement provided:

"AGREEMENT

"THIS AGREEMENT, made and entered into this 26th day of September, 1969, by and between WALLACE P. HILLS and EDNA TATLOW HILLS, his

wife, hereinafter referred to as parties of the FIRST PART; and ROY C. DIE-PENBROCK and EMMY DIEPENBROCK, husband and wife, hereinafter referred to as parties of the SECOND PART,

"WITNESSETH: That,

"IN CONSIDERATION of the stipulations herein contained and the payments to be made by the SECOND PARTIES as hereinafter specified, the FIRST PARTIES do by these presents agree to sell, and SECOND PARTIES do hereby agree to purchase, the following described real estate located in Dickinson County, Kansas, to wit:

"The Northeast Quarter (NE ¼) of Section Fifteen (15), Township Sixteen (16S) South, Range Four (4E), East of the 6th P.M. together with all and singular the tenements, hereditaments and appurtenances hereto of said real estate, upon the following terms and conditions, to wit:

"1) The consideration of this agreement shall be the sum of $40,000.00, to be paid in the manner following: The sum of $10,000.00 to be paid in cash upon the execution of this agreement as earnest money to the First National Bank, Herington, Kansas, escrow agent, to be immediately delivered by said escrow agent to FIRST PARTIES, and the balance of the principal remaining in the sum of $30,000.00, with interest thereon at the rate of 7% per annum upon any remaining unpaid principal balance, said interest to be computed from December 1, 1969, and payable annually thereafter, said principal to be due and payable as follows: $1,000.00 to be due and payable on or before December 1st, 1970, and $1,000.00 thereof to be due and payable on or before December 1st of each of the years following, until all principal and interest thereon has been paid in full as hereinbefore provided. It is understood and agreed by and between the parties hereto that interest is to be charged only upon any unpaid principal balance. It is stipulated and agreed that SECOND PARTIES are hereby given the right and privilege of prepayment of any principal amount at the time of any principal payment date, and may at any principal payment date pay the full amount of said principal due and owed upon and by virtue of this agreement, together with any and all interest due thereon, and upon full payment thereof, this agreement shall be accelerated and completed in full.

"2) Possession of said premises is to be given to SECOND PARTIES as soon as the cropland is released by the present tenant thereof, reserving unto sellers possession and use of the house and garage until November 1, 1969.

"3) Parties of the first part are to pay the taxes for the year 1969, and prior years, and parties of the second part are to pay all assessments and taxes subsequent to the year 1969, and during the term of this agreement.

"4) Parties of the first part agree to furnish parties of the second part a good and merchantable abstract of title and good and sufficient warranty deed, conveying said property to them, free and clear of all encumbrances, subject to all easements, restrictions and leases of record, and will forthwith execute the warranty deed and place it, along with an executed copy of this agreement, in escrow with the First National Bank, Herington, Kansas, escrow agent. First parties will forthwith have the abstract of title brought up to date by a licensed and bonded abstractor and present the same to the attorney designated by the second parties. After the second partys' attorney has examined, inspected, passed upon and approved the abstract of title and the deed conveying said real estate, said abstract of title shall be

placed, along with the deed of conveyance and the contract, in escrow, as hereinbefore specified, to be held by said escrow agent until parties of the second part have made all payments as hereinbefore described, to the parties of the first part, and performed all of the conditions and covenants as hereinbefore set out and in the manner herein set forth, at which time and upon such full payment and compliance, said deed and abstract of title shall be delivered by the escrow agent to parties of the second part, their heirs, executors, administrators or assigns. It is agreed that all payments made hereunder shall be immediately paid by the escrow agent, to FIRST PARTIES.

"5) SECOND PARTIES agree as and for part of the consideration of this agreement that they will properly pay for all taxes and assessments assessed against the said property as hereinbefore

> "Barn Garage, South barn & the (illegible) Covered Bldg.
> (Change Okd by E. Hills, Emmy Diepenbrock, W. P. Hills,
> Roy Diepenbrock)

specified, and will fully insure all buildings for fire, wind-storm and other related coverage and deposit the policy showing such coverage, with the escrow agent. Further, in the event that second parties shall fail to perform any or all of the conditions and obligations as set forth in the preceding sentence, FIRST PARTIES may, at their option, make such payments for taxes, assessments, repairs and insurance, and add the cost thereof to the balance of the principal due and owing upon this agreement.

"6) SECOND PARTIES further agree that they will maintain these premises in a serviceable and sightly condition, and to keep the same up to the present grade of condition and repair, and not to destroy any equipment or improvements upon said premises, and to keep the premises and equipment thereon as in fully as good condition as the same exists as of this date, reasonable wear and tear and the damages of the elements excepted.

"7) It is agreed by and between the parties hereto that this agreement is not to be assigned until written permission is first obtained, each from the other, consenting to such assignment, the assignee to be defined and designated therein.

"8) The destruction or partial destruction of any of the buildings which are insured shall not alter the terms or conditions of this agreement, but all insurance proceeds received shall be the property of SECOND PARTIES and shall be used solely for the replacement of the buildings and the destruction thereon or to be paid upon the principal owed FIRST PARTIES herein.

"9) Time is of the essence of this agreement and in the event that SECOND PARTIES shall fail to faithfully keep, fulfill and perform any of the terms, conditions, and obligations herein contained, FIRST PARTIES shall have the right, at their option, and after 90 days default thereof, to declare this agreement null and void and of no force and effect and shall further have the right to re-enter upon and take possession of the said premises without formal notice of any kind to SECOND PARTIES. In such event FIRST PARTIES shall further have the right to retain all moneys paid to them by SECOND PARTIES as liquidated damages, it being hereby agreed by the parties hereto that such amount shall equal the reasonable rental value of the premises, and considered as rent for the use and occupancy of the premises while in possession of SECOND PARTIES. Further, until such time as SECOND PARTIES have fully paid the consideration set out

herein, upon the interest thereon, they shall be considered as a tenant in possession under a contract to purchase.

"10) It is mutually agreed by and between the parties hereto that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators, or assigns of the respective parties hereto."

Following the execution of this agreement, an abstract of title was delivered to the Diepenbrocks and a warranty deed was delivered by the Hills to the escrow agent as required by the fourth paragraph of the agreement. However, the contract of sale and deed were not recorded in the courthouse. Mr. Hills paid the real estate taxes on the property in question for the year 1969, and he received all of the rentals for 1969, as provided by the third paragraph of the agreement. In short, Mr. Hills did everything required of him under the agreement.

The Diepenbrocks made the $10,000 earnest money payment to the escrow agent as required by the agreement. The Diepenbrocks' attorney passed upon and approved the title and deed on November 11, 1969, as required by the fourth paragraph. An insurance policy was placed in escrow as required by the fifth paragraph. At no time material herein were the Diepenbrocks in default under the terms of the agreement.

Mr. Hills was 77 years old when he executed the purchase agreement. His apparent hopes for a long and fruitful life, as reflected by the provisions in the agreement calling for payments of $1,000 from the Diepenbrocks for 30 years, proved to be unfounded. On November 29, 1969, one month after executing the agreement on the Dickinson County land, Mr. Hills died. He was survived by his wife and the heirs heretofore named. On the date of his death, $30,000 of the purchase price under the agreement plus interest accruing over the life of the contract remained to be paid.

On petition of the executor, dated December 29, 1969, the will of Wallace P. Hills, after a hearing, was admitted to probate on January 6, 1970. The widow consented and letters testamentary were issued to Marlin Brown, the named executor. The prepared inventory filed in the estate by the executor classified the balance due on the purchase agreement as an item of *personal property* in the estate of the decedent. It was described as "PROCEEDS FROM SALE OF REAL ESTATE (installment purchase agreement) $26,400."

Evidence later introduced in the district court disclosed that Lawrence Veerhusen was informed of the executor's decision to inventory the proceeds from the sale of the Dickinson County land as personalty 70 days after Mr. Hills' death.

On October 5, 1970, more than ten months after Mr. Hills' death, Lawrence C. Veerhusen filed a petition for the allowance of a demand, claiming the estate of Mr. Hills was indebted to him in the amount of $30,000. On February 9, 1971, by petition he first challenged the listing of the proceeds from the sale of the Dickinson County land as personal property in the inventory of the estate. The issue was also raised when the petition for final settlement was filed by the executor. The other heirs of Mr. Hills, heretofore named, intervened in the proceedings and argued, the same as Lawrence, that the unpaid balance upon the contract for sale of the Dickinson County land constituted real property.

On March 3, 1971, and again later, Lawrence C. Veerhusen tendered the sum of $3,000 in court to fulfill the condition stated in paragraph THIRD of the will of the decedent.

By reason of the foregoing, Lawrence C. Veerhusen claimed tender within 90 days of the filing of his petition was sufficient, and that the property in question should be designated as real property and fall within the purview of paragraph THIRD in the will of Wallace P. Hills, deceased.

The heirs of Wallace P. Hills, heretofore named, argued that the unpaid balance due on the contract constituted real estate, should be inventoried as such, and pass under paragraph THIRD of the decedent's will. They argued Lawrence C. Veerhusen had failed to meet the conditions precedent to his obtaining the remainder, whereupon the heirs of the decedent, had the decedent been single at the time of his death, would take pursuant to a gift over in paragraph THIRD of the decedent's will.

Edna I. Hills, the decedent's widow, among other things, defended on the theory that the action of the executor in classifying the unpaid balance due under the contract for the sale of the Dickinson County land as personal property in the inventory of the estate was proper. If so, she as a residuary beneficiary would take the property as "her own absolutely" under paragraph SECOND of the will of the decedent.

After prior hearings in the probate court, the matter was eventually transferred to the district court of Morris County. A pretrial

hearing was held and stipulations of fact were entered into by the parties. (These facts have heretofore been recited.)

On April 23, 1975, the district court, after hearing the matter *de novo*, issued a memorandum decision making findings and conclusions which in pertinent part read:

"16. The court finds that legal title to said real estate was in Wallace P. Hills at the time of his death and at the time of the filing of his will for probate.

"17. The court finds that the contract of sale specifically provides that the purchasers would be tenants until the completion of said contract. See paragraph 15 above.

"18. The court finds that said property, the subject of the contract of sale of real estate, should be designated as real property, and would therefore fall within the purview of paragraph numbered third in the will of Wallace P. Hills.

"19. The court finds that Lawrence C. Veerhusen, within 90 days from the date of the filing of his petition shown in paragraph 7 above, tendered into court the $3,000 for payment as provided for in the third paragraph of the will of Wallace P. Hills.

"20. The court finds that said tender is sufficient under the law, since its required payment was contingent upon a judicial determination, and that said judicial determination was made by the Probate Court on the 30th day of March, 1971.

"21. The court, based upon these findings of fact and conclusions of law, orders Lawrence C. Veerhusen to pay into the District Court of Morris County, Kansas, the sum of $3,000, to be distributed under the third paragraph of the will of Wallace P. Hills.

"22. The court finds that the money held in escrow as payment under the contract of sale, the same being both principal and interest, should be paid to Mrs. Edna I. Hills upon a showing by Edna I. Hills that said monies are necessary for her support in a manner to which she was accustomed during her husband's lifetime, all as provided for under the third paragraph of the will of Wallace P. Hills."

Ethel P. Fritzler appealed from the decision of the trial court holding the $3,000 tender by Lawrence C. Veerhusen to be sufficient under law. (This appeal includes Viola Furman, Dorothy Ring and Ethel Mae Henning as parties to the appeal.)

Edna I. Hills cross-appealed from findings No. 17 and No. 18 in the trial court's memorandum decision.

The numerous points asserted by the parties to this appeal, which are material to our disposition of the case, will be incorporated into the general discussion of the questions considered in the opinion.

The trial court considered two provisions in the agreement for the sale of the Dickinson County land material in distinguishing the purchase agreement from an ordinary contract for the sale of

real estate, where a mortgage is given as security for the balance of the purchase price due. These provisions are: (a) "Time is of the essence of this agreement"; and (b) the buyers shall be considered as tenants in possession under a contract of purchase until such time as they have fully paid the consideration. The finding of the trial court that the deed was placed in escrow and not recorded, thus showing record title in the name of the decedent, is immaterial. In *Gault v. Hurd*, 103 Kan. 51, 172 Pac. 1011, this court said:

".   .   . When the deed was delivered to the bank on [date] there was in legal effect a delivery of it to the grantee, subject only to the subsequent condition of final payment.   .   .   ." (p. 53.)

For reasons hereafter assigned we find the Dickinson County land was *equitably converted* into personal property and passes to Edna I. Hills under paragraph SECOND of the will of Wallace P. Hills, deceased.

A general definition of equitable conversion is given in 27 Am. Jur. 2d, Equitable Conversion, Sec. 1, p. 483. It reads:

"Equitable conversion is that constructive alteration in the nature or character of property whereby, in equity, real estate is for certain purposes considered as personalty, or whereby personalty, for similar considerations, is regarded as real estate, and in either instance, it is deemed to be transmissible and descendible in its converted form.   .   .   ."

The general rule here applicable is stated in 77 Am. Jur. 2d, Vendor and Purchaser, Sec. 320, pp. 481-482, as follows:

"The equitable principle that the interest of the vendor under an executory land contract is to be regarded as personalty has been frequently applied in the distribution of a deceased vendor's estate; accordingly, it is held that the vendor's interest in the land which he has contracted to sell passes to his personal representative as personalty, together with the right to the unpaid purchase money and securities therefor.   .   .   ."

For discussions on equitable conversion in Kansas cases see *In re Estate of Elliott*, 174 Kan. 252, 255 P. 2d 645, and *Schneider v. Schneider*, 135 Kan. 734, 12 P. 2d 834.

Prior Kansas cases on the subject show a clear trend to follow the general rule of law and apply equitable conversion. In *Gilmore v. Gilmore*, 60 Kan. 606, 57 Pac. 505, an agreement to sell 160 acres of land for the sum of $5,250 was signed. The sellers executed a deed and the purchasers executed the notes and mortgages provided in the agreement. All were deposited in

escrow. A $500 cash down payment was made, and the purchasers went into posession. Following the death of E. Gilmore, one of the sellers, the court announced the following general rule:

". . . 'A contract for the sale of real estate works an equitable conversion of the land into personalty from the time when it was made, and the purchase-money becomes, thereupon, a part of the vendor's personal estate, and, as such, distributable, upon his death, to his widow and next-of-kin.' . . ." (pp. 609-610.)

In *Pickens v. Campbell,* 98 Kan. 518, 159 Pac. 21, and 104 Kan. 425, 179 Pac. 343, the court noted the general rule above mentioned. There, however, title was withheld; performance by the vendee at the time stipulated was a condition precedent to the acquisition of title; default entailed forfeiture of payments already made, and right of possession; the vendor was then at liberty to reenter or to invoke the remedy of ejectment; and insertion of the provision, "Time is of the essence of this agreement," would have been superfluous. Accordingly, the land covered by the contract was treated as real estate.

*In re Estate of Taylor,* 185 Kan. 523, 345 P. 2d 1028, followed the general rule of equitable conversion. There Margaret Taylor entered into what was titled an "option agreement." The sale price under the option agreement was $4,065.45, approximately $1,500.00 of which had been paid at the time Mrs. Taylor died. The court held this option agreement was in fact an executory contract of sale and the seller's interest in the land passed to the personal representative as personalty.

*In re Estate of Snyder,* 199 Kan. 487, 430 P. 2d 212, deals with an ademption of a specific devise of real estate sold under an agreement during the testator's lifetime. Justice Kaul thoroughly examined the law on ademption of specific devises and similar cases in which real estate, under an executory contract of sale, was held to have been converted into personalty. The court found:

". . . [A] consistent attitude in this jurisdiction from which the conclusion may be drawn that where a contract of sale provides for the execution and deposit of a deed in escrow, a transfer of possession, a substantial down payment, and where time is not made of essence, the interest of vendor is converted from realty to personalty, as of his death, and the proceeds distributed accordingly. While all of the elements are not to be found in all of the cases cited, we find those which we have mentioned to be of persuasive significance and the most frequently considered." (pp. 498-499.)

In the *Snyder* case, more than $13,500 of a $63,000 purchase

price had been paid prior to the seller's death, the deed, notes and mortgages to the property were executed and deposited in escrow, the purchasers had long been in possession at the time of the seller's death, and there was a substantial grace period of one year before forfeiture, thereby precluding any inference that time was of the essence.

Here, as previously mentioned, a 25% down payment had been made. This compares favorably to the approximately 21% down payment in *Snyder*, and is far greater than the down payments in *Gilmore v. Gilmore*, supra (10.5%), and *In re Estate of Taylor*, supra (13.55%).

Some of the parties herein contend the *Snyder* case is distinguishable because there the contract was drafted to extend a maximum of six and one-half years and here the contract could conceivably run for 30 years. We do not deem this to be significant in the instant case. The purchasers here are given "the right and privilege of prepayment of any principal amount at the time of any principal payment date."

The parties stipulated the deed had been executed and deposited with the escrow agent prior to Mr. Hills' death. A transfer of possession subject to the cropland rights of the prior tenant had been made prior to Mr. Hills' death. Thus, three of the most important factors found in the *Snyder* case are found here. (See J. Logan, Survey of Kansas Law: Estate Planning and Future Interests, 17 Kan. L. Rev. 455, 490 [1969].)

Contrary to the facts in the *Snyder* case the purchase agreement here expressly stated, "Time is of the essence in this agreement." This provision is consistent with normal installment land contracts. (N. Hines, Forfeiture of Installment Land Contracts, 12 Kan. L. Rev. 475, 476 [1964].) However, we regard this distinction on the facts here presented as insufficient to take the instant case out of the rules announced in the *Snyder* case. Here, the "time is of the essence" provision regarding forfeiture is watered down and made applicable only in the event of the purchaser's non-payment *after a 90 day grace period, and then only at the option of the sellers.*

Although not expressly stated, the court found time was of the essence in a contract in *Pickens v. Campbell*, 104 Kan. 425, 179 Pac. 343. The court there gave considerable attention to the fact that the seller had not executed deeds to land sold and did not

place them in escrow for delivery on payment of all of the purchase price. The contract provided for *immediate* forfeiture of all sums paid upon a single default in payment, with no grace period allowed. The court found time was of the essence of the contract because title was withheld by the seller and could be obtained only upon performance by the buyer at the exact time stipulated.

The sellers in *Russell v. Ferrell*, 181 Kan. 259, 311 P. 2d 347, were trying to assert that time was of the essence in a contract for the sale of land where the contract did not so state, but the court held time was not of the essence because the circumstances surrounding the sale did not warrant such an inference. It further noted that while the opinion in *Drollinger v. Carson*, 97 Kan. 502, 155 Pac. 923, contains a statement that forfeiture provisions in a contract make time of the essence, this is not necessarily so, particularly where the seller has the option of declaring a forfeiture.

Here the forfeiture provisions are inconsistent with the recital in the purchase contract that "time is of the essence."

The appellant Fritzler and the appellee Veerhusen emphasize language in the purchase contract contemplated a future sale by the tense of the verb used, "to sell," and the language which recites that the purchasers would be considered as tenants in possession under a contract to purchase until all of the purchase price was paid.

The interpretation of these provisions in isolation cannot be determinative of the interpretation of the purchase contract when it is considered as a whole under all of the facts and circumstances here presented. The question confronting the court on this point was answered in the case of *In re Estate of Snyder*, supra, where the court said:

". . . [T]he issue to be resolved rests, not so much on whether or not the contract is to be classified as an option, one for sale in the future or one for present sale, but rather on the proposition whether the provisions of the contract and the performance had in connection therewith, prior to the vendor's death, effect such an alteration or substantial change in vendor's interest as to convert it from one of realty to personalty." (p. 499.)

In fact, the purchasers were more than tenants. The first paragraph of the purchase agreement indicated the vendors *agreed to sell* the Dickinson County land. The purchasers had paid one-

fourth (¼) of the agreed purchase price prior to taking any possession. They had possession of the land subject to the rights of the existing tenant. A deed had been executed and placed in escrow beyond the control of the sellers. In this respect the case may be compared to *In re Estate of Taylor*, supra, where the so-called "option agreement" was held in fact to be an executory contract of sale.

The record clearly shows that the only obligation stipulated in the purchase contract remaining to be performed by either party at the date of the death of Wallace P. Hills was the obligation of the purchasers to pay the balance of the purchase price, and the purchasers were not then, nor have they ever been, in default on that obligation.

The only interest of Wallace P. Hills on the date of his death in the Dickinson County land sold under the purchase contract was the right to receive payment of the balance of the purchase price when due. The interest of Wallace P. Hills in the Dickinson County land sold was so altered by the date of his death that it became a personal property interest in his estate. Any rights in the real estate retained by him were in the nature of security interests only, and not real property rights.

Overall the factors asserted to uphold the decision of the trial court do not change the rule announced in the *Snyder* case.

Because we hold the proceeds from the sale of the Dickinson County land under the purchase agreement passed as personalty under the SECOND paragraph of the decedent's will, it is unnecessary to examine the many arguments involving the passing of real estate under the THIRD paragraph of the decedent's will. Our recitation of the facts herein should not be construed as deciding any issues regarding paragraph THIRD of the decedent's will.

The judgment of the lower court is reversed.